[No. S024295. Nov. 23, 1992.]

MICHELLE CUMMISKEY, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Farris N. Salamy, Christie S. Warren and Quin Denvir for Petitioner.

John T. Philipsborn as Amicus Curiae on behalf of Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson and Michael Weinberger, Assistant Attorneys General, and W. Scott Thorpe, Deputy Attorney General, for Real Party in Interest.

John J. Meehan, Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**LUCAS, C. J.**—The Grand Jury of the County of Sacramento returned an indictment charging petitioner with the first degree murder of Philip Inhofer

in violation of Penal Code section 187 (all further statutory references are to this code unless otherwise stated), and with use of a deadly and dangerous weapon (a knife) in violation of section 12022. The indictment further alleged the special circumstance of murder committed during a robbery under section 190.2, subdivision (a)(17)(i). Following the indictment, the prosecution announced it would not seek the death penalty.

The superior court denied petitioner's motion to set aside the indictment pursuant to section 995. We granted review after the Court of Appeal summarily denied her petition for a writ of mandate and/or other appropriate extraordinary relief.[1]

Although the transcript of the testimony before the grand jury, on which the indictment was based, contains substantial evidence supporting a finding of probable cause that petitioner committed the crimes charged against her, she claims there were several errors made by the prosecutor that require us to dismiss the indictment. First, she asserts she was denied fundamental fairness in the indictment proceedings because the grand jury was misled into believing that it could return an indictment if it found "sufficient cause" to do so. She claims the grand jury may indict only if it is instructed pursuant to section 939.8 that "all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, warrant a conviction by a trial jury."

Next, petitioner contends the prosecutor interfered with the grand jury's attempt to ask questions and to gather additional evidence in contravention of section 939.7, which allows the jury to consider other evidence "when it has reason to believe that other evidence within its reach will explain away the charge." Finally, petitioner complains that the prosecutor failed to instruct the grand jury on lesser included offenses, and violated his duty to present exculpatory evidence. (See *Johnson* v. *Superior Court* (1975) 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792].) As explained below, we find no error.

---

[1]The dissent suggests that petitioner's contentions are not cognizable under section 995 because they are claims of instructional error only. Petitioner's chief assertion—that the grand jury was misinstructed on the minimum standard of proof required to indict—is manifestly tantamount to a claim that, as instructed, the jury may have indicted her on less than reasonable or probable cause. As such, the indictment was plainly subject to a motion to set it aside on that ground under section 995, subdivision (a)(1)(B). Moreover, petitioner's remaining claims are, in essence, grounded on the premise that the manner in which the prosecutor conducted the grand jury proceedings ran afoul of her due process rights under the relevant statutory and common law principles governing indictment by grand juries. Clearly, the Court of Appeal acted within its jurisdiction in entertaining petitioner's mandamus proceeding seeking relief from the trial court's denial of her motion to set aside the indictment under section 995. (See § 999a; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, § 2108, p. 2478.)

## I. Facts

Henry Inhofer, the son of victim Phillip Inhofer, testified before the grand jury that on the night of March 7, 1991, he went to his father's mobilehome in Sacramento and, finding no lights on in the home or any vehicle in the carport, entered the home. He found his father's body in a pool of blood. The victim had been stabbed over 30 times. A plastic bag was over his head, and the tip of a knife was embedded in his collar bone. The victim's 1975 Mercedes was missing from the carport.

Officer Wilson, a police officer in Biloxi, Mississippi, testified that in May 1991 he saw a Mercedes in the open back of a rental truck that was parked along the highway. He approached the two occupants of the truck, Crystal Woodruff and petitioner. Woodruff permitted him to examine the car. After finding that it had no license plates and appeared to be freshly painted, he ran a vehicle identification check on the car, and determined it had been stolen. The officer also learned of an outstanding warrant for petitioner's arrest in connection with the Inhofer murder. He arrested petitioner at the scene.

Officer Cabrera of the Sacramento Police Department testified that he interviewed petitioner in Biloxi two days after her arrest. After being advised of her constitutional rights, petitioner told Cabrera that she hurt Inhofer, but she did not kill him. She claimed she originally met the victim when she was working as a prostitute for an escort service in Reno. Petitioner stated that before having sex, the victim became angry with her because another prostitute (Dana Outland) had taken two of his rings. Eventually, however, the dispute was settled and petitioner and the victim had sexual intercourse.

Thereafter, while Inhofer was in the shower, petitioner took some LSD. Petitioner claims she then saw a monster in front of her, it attacked her, and she attempted to defend herself. She also stated that she hurt the victim, and that she lost her soul because she hurt someone she loved. Petitioner said that she had red all over her and that it made her sick. She then took some towels and cleaned everything up and spent the night in the residence.

According to petitioner, the day after the murder, Satan told her to take Inhofer's car and to paint it silver. Petitioner claims that Satan told her he would protect her, and that he wanted her to be the "best evil machine possible."

Police found petitioner's diary inside Inhofer's car. In an entry dated March 27, 1991, petitioner wrote, "sitting in my hotel room I am just

informed of some awful news. It seems that my sister has been very naughty, so I have to move on." The diary contained another entry dated April 9, 1991, that stated, "He took me back to my hotel. On the way I spotted a six-inch hunter's knife . . . then I realized it would be a wise choice to go home by myself . . . knives and/or suffocating will be the death of me. Father said that if you live by the sword you shall die by the sword."

Police also found a journal marked "sales and or cash received journal" which had an entry dated January 3 that stated: "charges, five hundred. Payments, five hundred. Customer name: Philip Inhofer."

Outland also testified before the grand jury. She stated that about two months before Inhofer's murder, petitioner told her that she met a customer and was going to kill him and take his Mercedes. Outland, however, did not take petitioner seriously. Several times over the next two months, petitioner told Outland she intended to "get my Mercedes." On one occasion, petitioner took a substantial amount of LSD, said she was going to poison "the client's food," and asked Outland to take her to the store to buy rat poison.

On the day before the murder, petitioner asked Outland to give her a ride to the victim's mobilehome. She said she was "going to get" the Mercedes. When petitioner picked up Outland in Reno, petitioner was carrying four pieces of luggage. As they were driving to Inhofer's mobilehome in Sacramento, petitioner had Outland stop at a store so she could purchase rat poison. After arriving at the mobilehome, petitioner introduced Outland to Inhofer. Before leaving petitioner and Inhofer, Outland stole one of Inhofer's rings and pawned it the next morning. She admitted to the grand jury that she had previously been convicted of two felonies, and that the prosecutor promised her that if she testified, she would not be charged with stealing the ring.

## II. DISCUSSION

### A. *Standard of Proof*

Under the California Constitution, article I, section 23, "One or more grand juries shall be drawn and summoned at least once a year in each county." (See also §§ 904, 905.) After the names of the grand jury are drawn and the jury is summoned (§ 906), it is sworn pursuant to the oath contained in section 911, and then is "charged by the court" (§ 914). The jury is also informed of its "powers" and "duties" as a panel. (§ 914.1.) These powers and duties are set forth commencing with section 925 and include sections 939.8 (informing grand jury an indictment shall be returned when evidence

would "warrant a conviction by a trial jury"), 939.7 (giving grand jury power to subpoena additional witnesses), and 939.2 (informing grand jury that superior court judge may issue subpoena at grand jury's request), which provisions we discuss in greater detail below.

When the present grand jury was impaneled, each member was given a copy of the "Grand Jury Handbook," which sets forth all statutory provisions relating to grand juries. The jury was then further instructed by the superior court on the standard of proof necessary to return an indictment as follows:

"What is the degree of evidence sufficient to warrant the return of an indictment? The law specifically provides that an indictment should be found when all of the evidence before you, taken together, if unexplained or uncontradicted, would, in your judgment, provide sufficient cause to believe that a public offense was committed and that the person accused is guilty of it. For sufficient cause there must be enough evidence to support a strong suspicion or probability of (1) the commission of the crime or crimes in question, and (2) the accused's guilt thereof. In determining the existence of sufficient cause, you may consider circumstantial evidence, that is, proof based on logical inference. Conjecture and surmise alone, however, can never be sufficient. Only when the evidence measures up to the standard fixed by law may you return an indictment. To do otherwise would be a violation of your oath." (Hereafter "sufficient cause" instruction.)

Six and one-half weeks after it was impaneled, the prosecutor repeated the superior court's foregoing "sufficient cause" instruction to the grand jury. Petitioner now claims the jury should have been instructed under the exact language of section 939.8, which provides that: "The grand jury shall find an indictment when all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, *warrant a conviction by a trial jury.*" (Italics added.)

Petitioner asserts that by instructing the grand jury that it could return an indictment on "sufficient cause," rather than under the precise language of section 939.8, the superior court and the prosecutor erroneously directed the jury pursuant to the "sufficient cause" test that governs a magistrate's duty (after a preliminary hearing) to either discharge the defendant or issue an order holding him or her to answer to the complaint. (§§ 871, 872;[2] *Williams v. Superior Court* (1969) 71 Cal.2d 1144 [80 Cal.Rptr. 747, 458 P.2d 987].)

---

[2]Section 871 provides: "If, after hearing the proofs, it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense, the magistrate shall order the complaint dismissed and the defendant to be discharged . . . ." Section 872 provides: "(a) If, however, it appears from the examination

■ Petitioner claims that the plain language of section 939.8 *requires* the grand jury to use a higher standard of proof than "sufficient cause," in deciding whether to return an indictment. The failure to instruct the grand jury under section 939.8, petitioner claims, is grounds for dismissal of the indictment. (See § 995(a)(1)(B).) As we explain, we disagree.

Our first task in determining what standard of proof should apply to grand jury indictments is to ascertain and effectuate the underlying legislative intent of the relevant statutes. (See *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) By including the phrase "warrant a conviction by a trial jury," the Legislature did not intend to equate a grand jury proceeding with a trial, as plaintiff's argument implies. The term "warrant" is defined in Webster's New World Dictionary (2d college ed. 1980) as: "1. *a)* authorization or sanction, as by a superior or the law *b)* justification or *reasonable grounds* for some act, course, statement, or belief. . . ." (Italics added.) Moreover, section 889 defines the term "indictment" as: "an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense." Thus, under the statutory scheme, it is the grand jury's function to determine whether probable cause exists to accuse a defendant of a particular crime. In other words, the grand jury serves as part of *the charging process* of criminal procedure, not *the adjudicative process* that is the province of the courts or trial jury.

Our understanding of the standard of proof necessary to support an indictment has been documented by cases discussing the role played by the grand jury in the legal process. For example, in *Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49 [216 P.2d 859], we observed that the standard of proof for returning an indictment is tied to the standards governing when an indictment should be dismissed for lack of probable cause under section 995. As noted above, an indictment returned under section 939.8 will not be *set aside* under section 995, subdivision (a)(1)(B), unless the defendant "has been indicted without reasonable or probable cause." This is the same standard governing when an information (following a preliminary hearing) shall be set aside. (§ 995, subd. (a)(2)(B).)

*Lorenson, supra,* noted that by "section 995 of the Penal Code, an information, and . . . an indictment, 'must be set aside by the court [if the defendant] has been indicted without reasonable or probable cause' or 'committed without probable cause.' The term 'probable cause,' as used in

that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty, the magistrate shall . . . 'order that he or she be held to answer to the same.' "

this connection, was defined in *People* v. *Nagle* [(1944)] 25 Cal.2d 216, 222 [153 P.2d 344], in which it was pointed out that evidence which will justify a prosecution need not be sufficient to support a conviction. As stated by Justice Carter [in *Nagle*], 'Section 872 of the Penal Code provides that the defendant must be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof." ' " (*Lorenson, supra,* 35 Cal.2d at p. 56; see also *Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319, 321 [121 P.2d 713].)

In a related context, we observed that a magistrate's authority in determining whether to dismiss criminal charges is "limited to determining whether sufficient or probable cause exists to hold the defendant for trial." (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 664 [108 Cal.Rptr. 657, 511 P.2d 609].) In *Uhlemann,* we distinguished the probable cause test from the test used by a jury in determining guilt or innocence, namely, the "beyond a reasonable doubt" construction. We stated: " 'Of course, the probable cause test is not identical with the test which controls a [trial] jury . . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]" ' " (*Id.* at p. 667; see also *People* v. *Aday* (1964) 226 Cal.App.2d 520, 532 [38 Cal.Rptr. 199].)

In our view, the grand jury's function in determining whether to return an indictment is analogous to that of a magistrate deciding whether to bind a defendant over to the superior court on a criminal complaint. Like the magistrate, the grand jury must determine whether sufficient evidence has been presented to support holding a defendant to answer on a criminal complaint. This is what section 939.8 means when it requires the grand jury to return an indictment when evidence would "warrant a conviction by a trial jury."

More recently, in *Bowens* v. *Superior Court* (1991) 1 Cal.4th 36, 43 [2 Cal.Rptr.2d 376, 820 P.2d 600], we upheld the constitutionality of article I, section 14.1 of the state Constitution, providing that "If a felony is prosecuted by indictment, there shall be no post-indictment preliminary hearing."

This provision was added to our Constitution by initiative in 1990 (Prop. 115). In *Bowens*, we recognized "an abundance of legitimate justifications for the state's discretionary use of the indictment procedure to initiate felony prosecutions. Among [these] justifications are the state's interest in 'obtaining a pretrial determination of *probable cause* without unnecessarily taxing the state's resources' [citation] and creating 'a system in which justice is swift and fair [citation].' " (*Bowens, supra,* at p. 43, italics added.) It is clear in *Bowens* that we assumed the standard of proof for grand jury proceedings would be "probable cause."

Petitioner claims we should follow contrary dictum in *People* v. *Tinder* (1862) 19 Cal. 539, 542, where the court addressed whether a person indicted for a capital offense was entitled to bail. As explained, we decline the invitation.

After determining that an indictment created a strong presumption of guilt, the *Tinder* court discussed whether an indictment could be impeached at the bail hearing. In 1862, the majority rule was that in capital cases, the evidence supporting an indictment could not be attacked on an application for bail because the deliberations of the grand jury were secret. (*People* v. *Tinder, supra,* 19 Cal. at p. 544.) The court concluded that because the "finding of the grand jury by the indictment cannot be the subject of review upon application for bail" the application for bail should be denied. (*Id.* at p. 545.)

When *Tinder, supra,* 19 Cal. 539, was decided, bail was not permitted " 'when the proof [of guilt] is evident or the presumption great.' " (*Id.* at p. 542, quoting former Crim. Prac. Act, § 510.) In emphasizing that the evidentiary standard for grand jury proceedings was high, the court stated that an indictment "is then something more than a mere accusation based upon probable cause." (*Tinder, supra,* at p. 543.) Contrary to plaintiff's assertion, the *Tinder* court's reference to probable cause was a comment on the quality of *evidence* required to return an indictment, not on the standard of proof for grand jury proceedings. To the extent petitioner relies on *Tinder* as establishing the standard of proof necessary to return an indictment, we hold that it has been impliedly overruled by the cases previously cited.

Other states with statutes substantially identical to section 939.8 have determined that the standard of proof for returning an indictment is "probable cause." (See *Michael* v. *State* (Alaska 1991) 805 P.2d 371, 374; *State* v. *Nordquist* (N.D. 1981) 309 N.W.2d 109, 117; *State* v. *Walley* (1969) 1 Or.App. 189 [460 P.2d 370, 371].) Several states without a section 939.8 equivalent also conclude that an indictment must be based on an independent

"probable cause" determination. (See, e.g., *State* v. *Williamson* (1983) 113 Wis.2d 389 [335 N.W.2d 814]; *State* v. *Stepney* (1980) 181 Conn. Cir. Ct. 268 [435 A.2d 701]; *State* v. *Terrell* (Minn. 1979) 283 N.W.2d 529.)

We conclude, therefore, that the standard of proof under section 939.8 for returning an indictment is "probable cause." Accordingly, the prosecutor must explain to the grand jury that section 939.8 requires a finding of "probable cause" before an indictment is returned.

■ Because the grand jury in the present case was instructed pursuant to the "probability" language of sections 871 and 872, we must determine whether this instruction was equivalent to informing the grand jury that it must find probable cause to indict. As noted above, in *Lorenson* v. *Superior Court, supra,* 35 Cal.2d 49, 56, this court determined that a grand jury must find "probable cause" of guilt in order to return an indictment against a defendant. In doing so, the court also observed that "probable cause" " 'means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a *strong suspicion* of the guilt of the accused. "Reasonable and probable cause" may exist although there may be some room for doubt.' " (*Id.* at p. 57, italics added; see also *People* v. *Crosby* (1962) 58 Cal.2d 713, 725 [25 Cal.Rptr. 847, 375 P.2d 839] [applying to indictments rule that defendant will not be held to answer information filed after preliminary hearing without "reasonable or probable cause."]) Here, the grand jury was instructed that "there must be enough evidence to support a strong suspicion or probability" of the commission of the crimes and "the accused's guilt thereof." Based on the above cases, the grand jury was adequately instructed that it must find the equivalent of "probable cause to indict."

■ Finally, having concluded that section 939.8 requires the grand jury to base an indictment on probable cause, we must decide whether the evidence presented to the grand jury in this case was sufficient to warrant a finding of probable cause that petitioner committed the murder in question. We find it was sufficient. As discussed above, the evidence implicating petitioner in the crime was substantial. Dana Outland's testimony that petitioner stated she was going to poison the victim and take his Mercedes, and the evidence found at the scene of the crime and in the victim's car, was more than sufficient to afford the grand jury probable cause to return an indictment.

### B. *Consideration of Other Evidence*

Petitioner next contends that when responding to a series of specific evidentiary questions asked by the grand jury, the prosecutor should have

reminded the panel that if it had doubts about petitioner's guilt, it was required under section 939.7 to conduct its own investigation and that it could direct the court to subpoena witnesses to corroborate its doubt under section 939.2. Petitioner states the prosecutor, by instructing the panel that it "should only consider the evidence presented," violated his duty to provide the grand jurors accurate advice and to honor and facilitate their power and duty of independent investigation under the above instructions. As explained below, we reject petitioner's contention.

Section 939.7 provides that the "grand jury is not required to hear evidence for the defendant, but it shall weigh all the evidence submitted to it, and when it has reason to believe that other evidence within its reach will explain away the charge, it shall order the evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses." A related statute provides that the district attorney may subpoena witnesses to appear before the grand jury, and that the grand jury may independently request issuance of a subpoena by a superior court judge. (§ 939.2.)

Petitioner acknowledges that when the grand jury was initially impaneled, it was instructed by the superior court, pursuant to sections 939.7 and 939.2, that it could summon witnesses independently of the prosecutor. Specifically, the court told the jury that in its investigation of the charge, "The Grand Jury is empowered to compel the attendance of witnesses and of persons before it by subpoena, and to require the production of books, records, documents, and other material objects. But neither the Grand Jury as a body, nor any committee of the Grand Jury, can compel the attendance of a witness or the production of records before a committee of the Grand Jury. You cannot yourselves issue subpoenas. That is the function of the Court and the prosecuting authorities, but you may direct subpoenas be issued and served." The court also instructed the panel with the substance of section 939.7 when the court told it, upon impanelment, that it is "not required to hear evidence for an accused person, but you must weigh all the evidence submitted to you, and if you have reason to believe that other evidence within your reach will explain away the charge, you must order the evidence to be produced for your consideration. You may require the issuance of process for this purpose."

Petitioner relies, however, on the following exchange, which occurred six and one-half weeks after the above instruction was given:

"GRAND JUROR GALLIGHER: The first question was whether any of the accused's hair or skin was found on Mr. Inhofer's body or around.

"MR. STEED [Prosecutor]: You can only consider the evidence we presented to you, and you shouldn't speculate.

"You might want to admonish—you can't speculate as to what the evidence should be or was. You can only consider the evidence presented to you because, you see, you would be going outside the realm of the evidence presented to you.

"So I guess I should have mentioned that to you. Evaluate the evidence. See whether or not it appears—

"FOREMAN: We have five more questions that might fall into that same category.

"MR. STEED: Go ahead, please.

"GRAND JUROR GALLIGHER: The second one was: Were the bloody towels ever found?

"MR. STEED: Again, you have to consider the evidence you heard from the witness.

"GRAND JUROR GALLIGHER: Was the murder instrument ever found or identified?

"MR. STEED: Well, remember the testimony of Dr. Reiber? Remember what he found in the chest of the victim. That's all—that's the only evidence you received relative to the weapon.

"GRAND JUROR GALLIGHER: Okay. What was the relationship of Crystal Woodruff to the accused?

"MR. STEED: See, you can only consider the evidence that came to you. You can't speculate because, see, if we do this, we put a trial on.

"GRAND JUROR GALLIGHER: Next question is: Did the accused ever admit or state that she was going to kill the deceased when she was not on drugs?

"MR. STEED: The only statement—again, you have to go by the testimony of the detective, what she said relative to that. What she said and you heard.

"GRAND JUROR GALLIGHER: The Sacramento police officer, Detective Cabrera, noted there was a bloodprint [*sic*] on the screen door.

"Was it ever identified?

"MR. STEED: What he indicated in his testimony, there appeared to be the image of a fingerprint on the blood.

"GRAND JUROR GALLIGHER: The next question is: What is the height and weight of the accused?

"MR. STEED: You don't have that in front of you.

"GRAND JUROR GALLIGHER: The next question is . . . Was [Dana Outland] given immunity from a charge of being a principle or accessory?

"MR. STEED: I think we have to do this. I think I am going to have to talk to you some more here about the law.

"You can't—you have to understand you have to sit as triers of fact for this type of a hearing, determine whether an indictment should be issued based upon the evidence you heard here.

"And I am sure you might have a lot of inclination to—your logic tells you to ask other questions. But the issue is whether or not to indict Cummiskey. That's what's before you: Whether or not the indictment should be issued just for her.

"And Woodruff didn't testify. As a matter of fact, there is no testimony or evidence presented relative to Woodruff or any statements, anything like that.

"Just trying to keep you on track here. You have to consider the evidence that came to you from the witness stand in deciding whether or not there is sufficient enough evidence to support an indictment and put it in perspective what your role is relative to that as opposed to considering as if you were jurors sitting in a jury trial.

"FOREMAN: I think we understand now.

"MR. STEED: Okay. I am not—I am just trying to give you an idea how it has to work. You guys have to just evaluate it, determine whether it is sufficient to support an indictment."

■ Petitioner contends that because six and one-half weeks elapsed between the time the grand jury was instructed by the superior court on its independent duty to investigate the exculpatory evidence where warranted, and the time of the prosecutor's response to the grand jury's evidentiary questions, the jury's understanding of its authority to order the production of

evidence and other witnesses was severely undermined by the prosecutor's refusal to answer any of the jury's evidentiary questions and his repeated advice to "only consider the evidence presented to you." Petitioner relies on *Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 (*Johnson*), to support her contention.

In *Johnson,* the defendant was charged with possession of and selling dangerous drugs (§ 182; Health & Saf. Code, § 11352). After considering the defendant's testimony at a preliminary hearing, the magistrate dismissed the complaint against defendant. The district attorney then presented the case to the grand jury, but failed to inform it of the defendant's preliminary hearing testimony that tended to " 'explain away' the charges against him, at least in the magistrate's opinion." (*Johnson, supra,* 15 Cal.3d at p. 251.)

We held that "when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated under section 939.7 to inform the grand jury of its nature and existence, so that the grand jury may exercise its power under the statute to order the evidence produced." (*Johnson, supra,* 15 Cal.3d at p. 255.) We recognized in *Johnson* that this duty on the part of the district attorney is based on the fact that the "adversary system does not extend to grand jury proceedings" and that "if the district attorney does not bring exculpatory evidence to the attention of the grand jury, the jury is unlikely to learn of it." (*Ibid.*) By contrast, "At trial—where the adversary system operates—the district attorney may discharge his duty by disclosing to the defendant the substantial material evidence favorable to him" (*ibid.*), but "is not obligated to present such evidence at trial himself because it is defense counsel's duty to do so." (*Ibid.*)[3]

In the present case, petitioner fails to establish that either (i) the prosecution was aware of exculpatory evidence not presented to the grand jury or (ii) the grand jury had reason to believe there existed exculpatory evidence. Here, the prosecutor's comments, while not a model of clarity, essentially informed the grand jury that there was no additional evidence to present, and that no exculpatory evidence was available at the time of the grand jury's questions. Although the prosecutor told the grand jury not to speculate about the evidence presented, he never stated the grand jury could not exercise its

---

[3]We note that the United States Supreme Court recently held that a prosecutor seeking an indictment by a federal grand jury has no constitutional duty to disclose to the grand jury substantial exculpatory evidence. (*United States* v. *Williams* (1992) 504 U.S. __ [118 L.Ed.2d 352, 112 S.Ct. 1735].) Although we recognize the importance of the holding, we do not here have occasion to apply it given our analysis of the issues which are governed by state statute.

independent powers to hear additional, exculpatory evidence. Indeed, petitioner does not claim that any such exculpatory evidence exists. Accordingly, we conclude the prosecutor did not mislead the grand jury into believing it could not exercise its statutory power to request the superior court to subpoena additional witnesses or to order production of additional evidence during the proceedings.

## C. *Duty to Instruct on Lesser Included Offenses*

The prosecutor read several instructions to the grand jury, including CALJIC Nos. 8.00 (defining homicide), 8.10 (defining murder), 8.11 (defining malice aforethought), 8.20 (defining deliberate and premeditated murder) and 8.81.7 (defining the robbery-murder special circumstance). ▪ Petitioner contends the prosecutor erroneously omitted several key instructions on lesser included offenses that the prosecutor had a duty to give sua sponte (e.g., instructions on second degree murder, manslaughter, accomplice liability, corpus delicti, effect of intoxication, and deliberation). Petitioner asserts the prosecutor's failure to give these instructions led the grand jury to believe it could not return an indictment for voluntary manslaughter even if it concluded that petitioner was incapable of forming the requisite intent to commit murder because she was under the influence of LSD at the time the crime was committed.

Over 100 years ago, we determined that the prosecution has no duty to instruct the grand jury sua sponte on lesser included offenses. (*People v. Nichol* (1867) 34 Cal. 211, 217, disapproved on other grounds in *People v. Gorshen* (1959) 51 Cal.2d 716, 731-732 [336 P.2d 492].) Specifically, we observed that it "is not the province of the Grand Jury to determine the degree of murder. That duty is, by the statute, expressly cast upon the trial jury, and the designation of the degree by the Grand Jury is, therefore, as idle as a recommendation to the mercy of the Court appended to a verdict of guilty of murder in the first degree. If the Grand Jury undertake to designate the degree, such designation is to be disregarded. The trial jury may, notwithstanding, find the defendant guilty in the first degree, if, in their judgment, the testimony is sufficient." (*Nichol, supra*, 34 Cal. at p. 217.) Since *Nichol*, Courts of Appeal have upheld the general rule that the prosecutor owes no duty to instruct the grand jury sua sponte on lesser included offenses. (*People v. Fisk* (1975) 50 Cal.App.3d 364, 369 [123 Cal.Rptr. 414] [no duty to sua sponte instruct grand jury on intoxication as diminished capacity]; *People v. Gordon* (1975) 47 Cal.App.3d 465, 474-475 [120 Cal.Rptr. 840] [no duty to instruct grand jury on law in same manner trial judge instructs petit jury].)

In *Fisk, supra*, 50 Cal.App.3d 364, the defendant was indicted by a grand jury for murder, but later convicted by a trial jury of voluntary manslaughter.

On appeal, the defendant claimed the prosecutor attempted to manipulate the grand jury to indict him for murder, even though evidence suggested he lacked the intent to commit murder because he was under the influence of barbituates at the time of the crime. The court rejected the defendant's argument that the prosecutor erred by failing to inform the grand jury of the defense of diminished capacity. (*Id.* at p. 368.) *Fisk* held that a "prosecutor need not volunteer possible defense and mitigating alternatives, such as diminished capacity, to the grand jury. Nevertheless, when members of the grand jury ask questions, he owes them the duty of correct advice. . . . It is not within the prosecutor's prerogatives to close the door to a manslaughter indictment if such was the choice of the grand jury." (*Id.* at p. 369.)

In *Fisk, supra,* the prosecutor failed to advise the grand jury that intoxication could warrant a manslaughter charge even after the grand jury specifically asked if it could charge defendant with manslaughter. Instead, "he spoke only in terms of the insanity defense, thereby failing to inform the grand jury of the available alternatives." (50 Cal.App.3d at p. 369, fn. omitted.) After finding error, the Court of Appeal concluded no miscarriage of justice occurred because the trial jury ultimately accepted the defendant's diminished capacity defense and returned a manslaughter verdict. (*Id.* at p. 370.)

As in *Fisk, supra,* 50 Cal.App.3d 364, the grand jury in the present case was aware of petitioner's alleged voluntary LSD intoxication and her claim that it reduced her culpability. Unlike *Fisk,* however, the present grand jury never asked the district attorney whether it could return an indictment for voluntary manslaughter, rather than murder. Given the fact that the prosecutor had no sua sponte duty to volunteer an instruction on lesser included offenses, we find the grand jury was not misled into believing it was required to return an indictment for murder.

Authority in other states supports the foregoing position. For example, in *Oxereok* v. *State* (Alaska 1980) 611 P.2d 913, the Alaska Supreme Court rejected the defendant's claim that a first degree murder indictment should be dismissed because it resulted partially from the prosecutor's failure to instruct on lesser included offenses. In refusing to dismiss the indictment, the court stated, "From the prosecutor's point of view, the charging decision is one which must be made at an early stage when all the evidence is not necessarily before him in the form it will take at trial. He must make a preliminary evaluation in order to proceed, knowing that at several later stages he may dismiss some charges or may be compelled to elect. He should not be forced to make these crucial decisions in the pre-indictment stage; hence he may charge in accordance with what he then believes . . . can

establish a prima facie case." (*Id.* at p. 917, quoting Com. to ABA Standards Relating to the Prosecution Function and the Defense Function (approved draft 1971) § 3.9(e), p. 98; see also *State* v. *Inthavong* (Minn. 1987) 402 N.W.2d 799, 802 [indictment will be invalidated if instructions are "so egregiously misleading or deficient that the fundamental integrity of the indictment process itself is compromised"].)

In *People* v. *Valles* (1984) 62 N.Y.2d 36 [476 N.Y.S.2d 50, 464 N.E.2d 418], the defendant was indicted for second degree murder. He claimed the district attorney erroneously failed to instruct the grand jury on the defense of extreme emotional disturbance when that defense had been "suggested" by the evidence. The court held that: "The extent of the District Attorney's obligation to instruct the Grand Jury concerning defenses must be defined with reference to the role of that body. 'The primary function of the Grand Jury in our system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution' [citation]. Viewed from this perspective, the question of whether a particular defense need be charged depends upon its potential for eliminating a needless or unfounded prosecution. [¶] The appropriate distinction for this purpose is between exculpatory and mitigating defenses. An exculpatory defense is one that would, if believed, result in a finding of no criminal liability. . . . [¶] When a defense is urged in mitigation, on the other hand, it is not done in an effort to avoid criminal liability entirely; rather, it is an attempt to reduce the gravity of the offense committed. . . . Because consideration of such defenses by the Grand Jury would not prevent unfounded criminal accusation, but would, at best, merely reduce the degree of the crime charged, their presentation to the Grand Jury will not ordinarily be mandated. The District Attorney is free to seek an indictment for the highest crime the evidence will support. It is not necessary that, having presented a prima facie case and those complete defenses suggested by the evidence, the District Attorney go further and present defenses in mitigation, which ordinarily will involve matters for resolution by the petit jury upon a full record." (*Id.*, 476 N.Y.S.2d at p. 51.)

We conclude that, in accord with the foregoing cases, unless the grand jury specifically requests an instruction on lesser included offenses, the prosecutor is not *required* to so instruct in every case. We agree with the cited authority that the primary function of the grand jury is to investigate the crime charged and to determine whether probable cause exists to return an indictment for that offense. The question whether the evidence would support, "beyond a reasonable doubt," a lesser included crime only, or whether a particular defense should mitigate the crime, is more appropriately left to pretrial motions addressed to the trial court, or to determination by a trial jury.

## III. Conclusion

We conclude the standard of proof for returning an indictment is "probable cause." Because the grand jury was instructed that the evidence must support a "strong suspicion" or "probability," of petitioner's guilt, we conclude the grand jury properly understood its duty to find the equivalent of "probable cause."

We also find that the evidence and instructions given the grand jury supported the jury's indictment. An indictment should not be set aside when, as here, it is based on sufficient evidence establishing probable cause. The prosecutor did not mislead the jury regarding its ability to consider exculpatory evidence, if any. Absent a request from the jury for further instructions to assist it in returning an indictment, no additional instructions were required. Finally, we believe the prosecutor has no duty to instruct the grand jury sua sponte on lesser included offenses or various defenses.

Accordingly, the Court of Appeal's summary denial of a writ of prohibition, mandate or other relief is affirmed.

Panelli, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—While I agree with Justice Kennard's concurring and dissenting opinion in general, I am not convinced that the trial court should give substantial deference to the grand jury indictment when considering a motion under Penal Code section 995.

As pointed out in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916]—and indeed, in the facts of the instant case— genuine grand jury independence is largely a "fiction" (*id.* at p. 590). As a result we noted: "The problem of excessive prosecutorial influence is not solved by the availability of judicial review, for the same lack of objectivity, however inadvertent, which affects the grand jurors when they vote to indict infects the record for purposes of review. Excluded from the grand jury room, the defense has no opportunity to conduct the searching cross-examination necessary to reveal flaws in the testimony of prosecution witnesses or to expose dubious eyewitness identifications. This lack of defense participation in the development of the reviewable record creates a heavy bias in favor of a finding that the grand jury indictment was based on probable cause." (*Id.* at p. 591, fn. omitted.)

Although a preliminary hearing as a means of double-checking on an indictment's sufficiency is no longer a constitutional requirement, despite

*Hawkins*, there is still no less need for an adequate review of the evidence that ultimately compels a defendant to submit to the travail of a criminal trial. That can only be accomplished by objective—not deferential—analysis by a trial judge.

**KENNARD, J.,** Concurring and Dissenting.—The majority reaches the right result for the wrong reason. It correctly concludes that petitioner is not entitled to a writ of prohibition or mandate directing the superior court to grant her motion to set aside the indictment against her. But the majority errs in concluding that the superior court correctly instructed the grand jury on the standard of proof for an indictment, and that the prosecutor did not mislead the grand jurors by telling them they could consider only the evidence the prosecution had presented. As I shall explain, the superior court erred when it told the grand jury it could return an indictment if the evidence established a "strong suspicion or probability" of petitioner's guilt, and the prosecutor improperly discouraged the grand jury from exercising its independent investigatory powers when it limited their consideration to evidence already presented. Nevertheless, the Court of Appeal properly denied the writ petition because the irregularities petitioner has identified are not permissible grounds for attacking an indictment.

I

Petitioner brought a motion in superior court under Penal Code section 995 (hereafter section 995) to set aside the indictment against her. In that motion, petitioner raised these claims of error: (1) the court incorrectly instructed the grand jury on the standard of proof for returning an indictment; (2) the prosecutor erroneously instructed the grand jury to consider only evidence supplied by the prosecution; and (3) the prosecutor erroneously failed to instruct the grand jury on lesser included offenses shown by the evidence. The superior court denied the motion. Petitioner then sought review of the superior court's ruling by petitioning the Court of Appeal for a writ of prohibition or mandate. (See Pen. Code, § 999a.) The Court of Appeal summarily denied the petition, and this court granted review of the action taken by the Court of Appeal.

Section 995 permits an accused to attack an indictment on the ground that it was not properly "found, endorsed, and presented" and on the ground that the accused was "indicted without reasonable or probable cause." With one exception, a court may not set aside an indictment "on any grounds other than the two named in the statute." (*People v. Van Randall* (1956) 140 Cal.App.2d 771, 774 [296 P.2d 68]; accord, *Cereghino v. Superior Court* (1960) 177 Cal.App.2d 328, 330-332 [2 Cal.Rptr. 159]; see also, *People v.*

*Boehm* (1969) 270 Cal.App.2d 13, 23 [75 Cal.Rptr. 590] [bias of grand juror is not a ground for setting aside an indictment].) The single recognized exception is this: a court may set aside an indictment on the ground that the proceedings have failed to comport with the demands of the due process clause of the federal or state Constitution. (See *People v. Backus* (1979) 23 Cal.3d 360, 392-393 [152 Cal.Rptr. 710, 590 P.2d 837].)

Here, petitioner makes no claim that she was indicted "without reasonable or probable cause." In the words of petitioner's counsel, in a brief submitted to this court, "petitioner is *not* asking the Court to determine the sufficiency of the evidence to support the indictment under Section 995, and certainly is *not* contending that such an evidentiary challenge would be governed by any other standard of review than the probable cause standard set forth in Section 995." (Italics in original.)

Nor does petitioner contend that the indictment procedures denied her due process. Her claims are grounded in California statutes governing grand jury proceedings, not in the state or federal Constitution.

This leaves only one permissible ground for attacking the indictment under section 995: that it was not "found, endorsed, and presented as prescribed in this code." (§ 995, subd. (a)(1)(A).) Thus, the cognizability of petitioner's claims turns on the meaning of this statutory language.

A claim that an indictment was not "found, endorsed, and presented as prescribed in this code" may be based only on the provisions of "part 2, title 5, chapter 1, of the Penal Code beginning with section 940." (*People v. Jefferson* (1956) 47 Cal.2d 438, 442 [303 P.2d 1024], citing *People v. Kempley* (1928) 205 Cal. 441, 447 [271 P. 478], and *People v. Colby* (1879) 54 Cal. 37.) The referenced sections of the Penal Code contain these requirements: (1) In counties having a population exceeding 4 million persons, at least 14 of the 23 grand jurors must concur in the indictment; in all other counties, at least 12 of the 19 grand jurors must concur in the indictment (Pen. Code, § 940); (2) the indictment must be endorsed as "[a] true bill," and the endorsement must be signed by the grand jury "foreman" (*ibid.*); (3) the names of witnesses who have given evidence to the grand jury, either in person or by deposition, must be "inserted at the foot of the indictment, or indorsed thereon, before it is presented to the Court" (*id.*, § 943); and (4) an indictment must be presented to the court by the grand jury "foreman" in the presence of the other grand jurors, and must be filed by the clerk (*id.*, § 944). Petitioner's claims do not relate to any of these requirements.

Petitioner's three claims challenge the propriety of legal advice and instructions that the grand jury received. As such, none of these claims is

cognizable under section 995: "An indictment cannot be attacked either under Penal Code section 995 or following a denial of such motion on appeal from a judgment of conviction on the grounds that the grand jury was given insufficient or even inaccurate legal advice before returning an indictment." (*People* v. *Gordon* (1975) 47 Cal.App.3d 465, 476 [120 Cal.Rptr. 840].)

Because section 995 does not authorize a court to set aside an indictment on the grounds urged by petitioner, the superior court properly denied petitioner's section 995 motion, and the Court of Appeal properly denied the writ petition. This conclusion should end this court's consideration of the case. It does not, but only because the majority has chosen to cast aside the procedural barrier and to reach the substantive merits of petitioner's claims. Although the merits of petitioner's claims are not properly before us, the majority's resolution of those claims will influence the conduct of future grand jury proceedings. Rather than permit the majority's conclusions to pass unchallenged, I will explain why I disagree with the majority's analysis of two issues.

## II

Penal Code section 939.8 sets forth the standard of proof for an indictment in these words: "The grand jury shall find an indictment when all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, *warrant a conviction by a trial jury.*" (Italics added.) To determine the meaning of this statute, it is proper to begin by examining its words, as these are usually the best indicator of the Legislature's intent. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615].) If the language is clear, courts should construe a statute according to the usual and ordinary meaning of its words, unless this construction would produce absurd consequences or a compelling basis exists for concluding that the Legislature intended a different meaning. (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140]; *Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

The key phrase in the statute is "warrant a conviction by a trial jury." (Pen. Code, § 939.8.) The word "warrant" has this meaning: "To give sufficient grounds or good reasons for or to; to justify; to require as a consequence; as, his need *warrants* the expenditure; the evidence does not *warrant* us to change our opinion." (Webster's New Internat. Dict. (2d ed. 1942) p. 2877; see also *State* v. *Rish* (1916) 104 S.C. 250 [88 S.E. 531, 534] [stating that terms "warrant" and "justify" are "practically synonymous"].) Thus, the grand jury is to find an indictment when the evidence before it would justify or be sufficient for a conviction by a trial jury.

Evidence is sufficient to justify or sustain a conviction by a trial jury if it will withstand a motion for acquittal during trial (Pen. Code, § 1118.1) or a review on direct appeal from a judgment of conviction. Indeed, the phrase "warrant a conviction" has been used in both of these senses. Former section 1118 of the Penal Code, the predecessor of current section 1118.1, authorized the trial court to advise the jury to acquit the defendant if the court found the evidence insufficient to "warrant a conviction." (See *People* v. *Daniels* (1894) 105 Cal. 262, 266 [38 P. 720].) And, when reviewing the evidence on an appeal from a judgment of conviction, this court has often, particularly in older cases, phrased the issue in terms of the sufficiency of the evidence to "warrant a conviction." (See, e.g., *People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Ferlin* (1928) 203 Cal. 587, 595 [265 P. 230]; *People* v. *Richardson* (1911) 161 Cal. 552, 555 [120 P. 20]; *People* v. *Maroney* (1895) 109 Cal. 277, 279 [41 P. 1097]; *People* v. *Royce* (1895) 106 Cal. 173, 176 [39 P. 524]; *People* v. *Gallagher* (1893) 100 Cal. 466, 472 [35 P. 80].)

When a trial court rules on a motion for acquittal, it applies the same test as an appellate court reviewing a conviction for sufficiency of the evidence. (*People* v. *Blair* (1979) 25 Cal.3d 640, 666 [159 Cal.Rptr. 818, 602 P.2d 738].) For either purpose, the court must determine whether the evidence could persuade a rational trier of fact of the defendant's guilt beyond a reasonable doubt. (*People* v. *Bloyd* (1987) 43 Cal.3d 333, 346 [233 Cal.Rptr. 368, 729 P.2d 802].)

This standard of proof differs significantly from the standard used by a magistrate at a preliminary hearing. A magistrate will make an order holding a defendant to answer a felony charge if there is "sufficient cause" to believe the defendant is guilty. (Pen. Code, § 872.) "Sufficient cause" or "probable cause" means a state of facts that would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 636 [200 Cal.Rptr. 448, 677 P.2d 854].) The burden that this standard places on the prosecution at the preliminary hearing is "quite distinct from that necessary to obtain a conviction before a judge or jury." (*Id.* at p. 637.) To satisfy the standard of sufficient or probable cause, the evidence *"need not be sufficient to support a conviction."* (*Williams* v. *Superior Court* (1969) 71 Cal.2d 1144, 1147 [80 Cal.Rptr. 747, 458 P.2d 987], italics added; accord, *People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609].)

By equating the grand jury's standard of proof in indictment proceedings with that of a magistrate at a preliminary hearing, the majority holds that a standard of proof that requires evidence sufficient to "warrant a conviction

by a trial jury" may be satisfied by evidence that would not be sufficient to support a conviction. The majority concludes, in other words, that the Legislature did not mean what it said. Courts should reach such a conclusion only when presented with compelling grounds to support it. (*DaFonte* v. *Up-Right, Inc.*, *supra*, 2 Cal.4th 593, 601; *Burden* v. *Snowden*, *supra*, 2 Cal.4th 556, 562.) The majority provides no compelling grounds for its conclusion.

The majority argues that sufficient or probable cause is the appropriate test because the indictment is part of the charging rather the adjudicative phase of the criminal proceeding. This court disposed of essentially the same argument more than 100 years ago: "Formerly an indictment was regarded as a mere accusation, which the grand jury ought to find if probable evidence were adduced in its support. 'But great authorities,' says Chitty, 'have taken a more merciful view of the subject, and considering the ignominy, the dangers of perjury, the anxiety of delay, and the misery of a prison, have argued that the grand inquest ought, as far as the evidence before them goes, to be convinced of the guilt of the defendant. What was, therefore, anciently said respecting petit treason, may be applied to all other offenses, that since it is preferred in the absence of the prisoner, it ought to be supported by substantial testimonies.' (1 Crim. Law, 318.) The more merciful view of the subject thus referred to is secured by statute in this State. Our Criminal Practice Act declares that the grand jury . . . 'ought to find an indictment when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury' (Sec. 212), and of course ought not to find an indictment when the evidence taken together, if unexplained or uncontradicted, would not warrant such conviction. *The indictment is then something more than a mere accusation based upon probable cause*; it is an accusation based upon legal testimony, of a direct and positive character, and is the concurring judgment of at least twelve of the grand jurors, selected to inquire into all public offenses committed or triable within their county, that upon the evidence presented to them the defendant is guilty." (*People* v. *Tinder* (1862) 19 Cal. 539, 542-543, fn. omitted, italics added.)

Returning to this point later in the opinion, this court added: ". . . the grand jury have no right to present, and we are not to presume that they have presented, an indictment of that character, unless the evidence before them, unexplained or uncontradicted, would warrant in their judgment a conviction of the offense in that degree. The indictment is their finding that of the offense designated, in its character and degree, the defendant is guilty." (*People* v. *Tinder*, *supra*, 19 Cal. 539, 547.)

Thus, as this court explained, there were two schools of thought on the standard of proof for an indictment. The first, echoed by the majority in this

case, was that probable cause should be sufficient to indict because an indictment is a mere accusation. The second, described as the "more merciful view," was that the standard ought to be stricter than probable cause because grand jury indictment proceedings are ex parte, providing no opportunity for the accused to test the prosecution's evidence by cross-examination or to present affirmative evidence of innocence, and because the consequences of an indictment, in terms of loss of liberty and damage to reputation, are so severe. The Legislature's choice of language indicates its rejection of the "mere accusation" view of an indictment and its adoption of a more demanding standard of proof.

The statutory language construed in *People* v. *Tinder, supra,* 19 Cal. 539, was section 212[1] of The Criminal Practice Act of 1851 (Stats. 1851, ch. 29, p. 212 et seq.). In 1872, when the Legislature enacted the Penal Code, it preserved this language as Penal Code section 921, the source of current Penal Code section 939.8.[2] Because courts must assume that the Legislature acts with awareness of existing judicial decisions (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137]), this court must assume that the Legislature was aware of *People* v. *Tinder, supra,* 19 Cal. 539, when it enacted the Penal Code, and that it intended the language of Penal Code section 921 to carry the meaning ascribed to it in that decision. (*People* v. *Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].) Additional support for this conclusion is found in the code commissioners' note to section 921, because the note cites *People* v. *Tinder, supra,* in explanation of the provision's meaning. (Code comrs. note, Ann. Pen. Code § 921 (1st ed. 1872) p. 306.) The code commissioners' note "is entitled to great weight in construing the statue and in determining the intent of the Legislature." (*People* v. *Wiley* (1976) 18 Cal.3d 162, 171 [133 Cal.Rptr. 135, 554 P.2d 881].)

The 1872 Penal Code is significant for another reason. As an alternative to an indictment, the code authorized grand juries to use a presentment, which it defined as "an informal statement in writing, by the Grand Jury, representing to the Court that a public offense has been committed which is triable in the county, *and that there is reasonable ground for believing that a particular individual named or described therein has committed it.*" (Ann. Pen. Code

---

[1]Section 212 read: "The Grand Jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial Jury." (Stats. 1851, ch. 29, p. 235.)

[2]Section 921 of the 1872 Penal Code provided: "The Grand Jury ought to find an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury." In 1959, the Legislature repealed this section and reenacted its substance in Penal Code section 939.8. (Stats. 1959, ch. 501, § 2, p. 2454.)

§ 916 (1st ed. 1872) p. 305, italics added.)[3] Thus, the Legislature that adopted the 1872 Penal Code was well aware of the distinction between the reasonable or probable cause standard, which it chose to adopt for presentments, and the more exacting standard described in *People* v. *Tinder, supra,* 19 Cal. 539, which it chose to adopt for indictments.

The majority argues at some length that because the superior court employs the probable cause standard to *review* an indictment on a motion under section 995, the grand jury necessarily must employ the same standard to *return* the indictment in the first instance. But nothing in law or in logic requires that the same standard be used for these distinct purposes. The Legislature could reasonably have decided that the superior court should use a less exacting standard to avoid second-guessing the grand jury's factual determinations.

Indeed, this court has recognized that the superior court employs a deferential standard when it reviews the sufficiency of an indictment under section 995. In *Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49 [216 P.2d 859], a case cited by the majority, we put it this way: "The duty of determining whether or not an indictment should be found is lodged exclusively in the grand jury and not in the courts. The Legislature has stated that duty as follows: 'The grand jury ought to find an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, *in their judgment,* warrant a conviction by a trial jury.' (Pen. Code, § 921; italics added.) A court may not substitute its judgment as to the weight of the evidence for that of the grand jury. 'If there is some evidence to support the indictment, the courts will not inquire into its sufficiency (see cases collected in 59 A.L.R. 573).' (*Greenberg* v. *Superior Court* [(1942) 19 Cal.2d 319, 322 (121 P.2d 713)].)" (At p. 55, original italics.) Returning to this theme later in the opinion, the *Lorenson* court quoted this language from an earlier opinion: " '. . . [T]he [grand] jurors had the discretion to determine, "in their judgment" whether the evidence would "warrant a conviction by a trial jury." In that event . . . the jury "ought to find an indictment," as it did. We may not interfere with that discretion of the grand jury, or weigh the evidence adduced to determine its sufficiency.' " (*Id.* at p. 58, quoting *McFarland* v. *Superior Court* (1948) 88 Cal.App.2d 153, 158 [198 P.2d 318].)

I see only one way to read this language. When it reviews the sufficiency of the evidence to support an indictment under the "reasonable or probable cause" standard of section 995, the superior court gives deference to the

---

[3]In 1905, the Legislature repealed all provisions dealing with the presentment (Stats. 1905, ch. 531, § 1, p. 693.), thereby rescinding authorization for its use in this state.

grand jury's finding by applying a less exacting standard than that used by the grand jury. The majority's holding in this case is directly to the contrary: it permits the superior court, when ruling on a section 995 challenge to an indictment, to apply the very same standard used by the grand jury to the very same evidence considered by the grand jury. When it applies the same standard to the same evidence, the superior court necessarily substitutes its judgment for that of the grand jury. Thus, the majority allows the superior court to do precisely what this court said it could not do—interfere with the discretion vested exclusively in the grand jury.

Finally, the majority asserts that "[o]ther states with statutes substantially identical to section 939.8 have determined that the standard of proof for returning an indictment is 'probable cause.'" (Maj. opn., *ante*, p. 1028.) The assertion does not withstand scrutiny.

The majority cites *Michael* v. *State* (Alaska 1991) 805 P.2d 371, 374, in which the court remarked, in dictum, that "an accused is entitled, under Alaska law, to a decision *by a grand jury* that there is probable cause to hold him for trial." (Italics in original.) The majority ignores an earlier case containing a clearer and more authoritative statement. In *Maze* v. *State* (Alaska 1967) 425 P.2d 235, the defendant claimed a right to a postindictment preliminary hearing. Rejecting the claim, the court said: "Appellant here was not illegally prejudiced by not receiving the opportunity to 'test the complaint' by questioning witnesses and marshalling his evidence as is argued in his brief. The fact is that in presenting appellant's case to the grand jury, the factual basis for his continued detention was subjected to *a more strict standard* than would have been the case if a preliminary hearing had been held. Under Criminal Rule 5(d) (5) the district judge is required to hold the accused to answer to the grand jury if it appears that a crime has been committed and 'that there is sufficient cause to believe that the defendant is guilty of that crime.' . . . Criminal Rule 6(k) provides that the grand jury ought to find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction." (*Maze, supra,* at p. 237, italics added, original italics and fn. omitted; see also *Lupro* v. *State* (Alaska 1979) 603 P.2d 468, 473.)

In another case cited by the majority, an intermediate appellate court rejected a defendant's claim of entitlement to a preliminary hearing, saying: ". . . [A]n accused is not entitled to a preliminary hearing before he is indicted. The grand jury hearing is itself one which determines the existence of probable cause." (*State* v. *Walley* (1969) 1 Or.App. 189 [460 P.2d 370, 371].) The majority ignores the later decision in *Bekins* v. *Cupp* (1976) 274 Or. 115 [545 P.2d 861], in which the Oregon Supreme Court said: "A grand

jury can only indict a person 'when all the evidence before it, taken together, is such as in its judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury.' ORS 132.390. This is [a] *more demanding requirement* than reasonable suspicion . . . ." (*Id.*, 545 P.2d at p. 867, italics added; see also *State* v. *Shaw* (1984) 68 Or.App. 693 [684 P.2d 7, 9-10].)

The majority's final citation is to *State* v. *Nordquist* (N.D. 1981) 309 N.W.2d 109, in which the court held that it is not fatal to an indictment that some of the evidence before the grand jury was legally inadmissible. The opinion's references to the standard of proof are ambiguous, and consistent with the view that the required standard is more exacting than sufficient or probable cause. After quoting the statutory standard, which is similar to Penal Code section 939.8, the court remarked: "We believe that language reflects the Legislature's intent to allow the grand jury to determine whether or not the evidence put before it . . . is satisfactory for the purpose of directing, in good faith, an accusation toward the person who is the subject of the indictment *and which*, in the jurors' minds, *could withstand the test of trial.*" (*Nordquist, supra*, at p. 117, italics added.)

The majority notes that Wisconsin, having no statute equivalent to Penal Code section 939.8, has adopted probable cause as the standard to be used by the grand jury in indictment proceedings. What the majority fails to mention is that the Wisconsin Supreme Court, when presented with a contention that the grand jury should have been instructed in substantially the language of section 939.8 (that is, " 'you ought not to find an indictment unless in your judgment the evidence before you, unexplained and uncontradicted, would warrant a conviction by a petit jury' "), rejected the argument with these words: "It is considered that, whatever the law may be in other states, under the law of this state an instruction such as the one contended for requires *a degree of proof greater than that required at common law*, which must govern here, there being no statute." (*State* v. *Lawler* (1936) 221 Wis. 423 [267 N.W. 65, 69-70, 105 A.L.R. 568, 573], italics added.)

In an Oklahoma case, the defendant argued that a magistrate at a preliminary hearing ought to use the same standard of proof as a grand jury returning an indictment, and that the use of different standards denied those accused of crime the equal protection of the laws. (*Jones* v. *State* (Okla.Crim.App. 1983) 660 P.2d 634, 637.) The court rejected the contention, but it accepted its premise that different standards were used: "Under 22 O.S. 1981, §§ 262 and 264, the State's burden of proof at a preliminary examination is 'that any public offense has been committed, and that there is sufficient cause to believe the defendant guilty thereof . . . .' 22 O.S.1981, § 264. This is usually referred to as a showing of probable cause, and as

discussed earlier, the showing does not have to be enough evidence to support a conviction. On the other hand, under 22 O.S.1981, § 336, a grand jury may return an indictment 'when all of the evidence before them . . . would, if unexplained or uncontradicted, warrant a conviction by the trial jury.' *In other words, a prima facie case.*" (*Id.* at p. 637, italics added.)

The majority cites no case from New York. That state formerly had a statute similar to Penal Code section 939.8. (See *People* v. *Nitzberg* (1943) 289 N.Y. 523 [47 N.E.2d. 37, 145 A.L.R. 482].) New York courts interpreted this statute as requiring evidence sufficient to establish not merely probable cause, but a prima facie case. (*People* v. *Peetz* (1959) 7 N.Y.2d 147 [196 N.Y.S.2d. 83, 164 N.E.2d. 384]; *People* v. *Caminito* (1958) 3 N.Y.2d 596 [170 N.Y.S.2d. 799, 148 N.E.2d. 139].) Although the statutory language has changed, the New York courts interpret the new language as requiring the same exacting standard. (See, e.g., *People* v. *Jennings* (1986) 69 N.Y.2d 103 [512 N.Y.S.2d 652, 657, 504 N.E.2d 1079].)

Minnesota, like New York, formerly had a statute similar to Penal Code section 939.8. This statute was repealed and replaced by a statute expressly establishing a standard of probable cause. The Minnesota Supreme Court rejected a contention that the new statute was "merely a 'rephrasing' " of the prior law, concluding instead that it effected a change in the applicable standard of proof. (*State* v. *Lalli* (Minn. 1983) 338 N.W.2d 419, 420; see also *State* v. *Gottwalt* (1940) 209 Minn. 4 [295 N.W. 67, 69] [grand jury standard requiring evidence sufficient to "warrant a conviction" was a "stricter provision" than committing magistrate standard of "probable cause"].)

This review of decisions from other jurisdictions illustrates that the language used in Penal Code section 939.8 has been uniformly regarded as establishing a standard of proof different and more exacting than sufficient or probable cause. I conclude that the words of Penal Code section 939.8 "mean what they say and say what they mean" (*People* v. *Hansel* (1992) 1 Cal.4th 1211, 1218 [4 Cal.Rptr.2d 888, 824 P.2d 694]): the standard of proof for a grand jury to return an indictment is not probable cause, but substantial evidence sufficient to persuade a rational trier of fact beyond a reasonable doubt that the accused is guilty of the offense. Of course, the wisdom of this choice is not a matter for review by this court: "Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature." (*Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785].) Accordingly, the superior court in this case erred when it instructed the grand jury to return an indictment using a "sufficient cause" standard, which the court defined as enough evidence to

support "a strong suspicion or probability" that the accused committed the offense charged.[4]

## III

During the grand jury proceedings, the prosecutor examined the witnesses, but the grand jurors also submitted written questions, and the prosecutor put those questions to the witnesses. After the last witness had been excused, the grand jurors asked the prosecutor a series of questions about gaps in the evidence. For example, they asked if the murder weapon had been found and if fingerprints or hair samples had been taken at the victim's residence. In the course of his reply, the prosecutor said: "You can only consider the evidence we presented to you."

Petitioner contends that this response was erroneous because the grand jury is an investigatory body and is statutorily authorized to summon witnesses on its own initiative. Rejecting petitioner's contention, the majority reasons that: (1) nothing in the record suggests the prosecutor was aware of exculpatory evidence; (2) nothing in the record suggests the grand jury had reason to believe that exculpatory evidence existed; and, therefore (3) the prosecutor did not mislead the jury into believing it could not obtain additional evidence. I agree with the first two points, but the third point does not logically follow from them and is contrary to the record.

The grand jury is *required* to call for additional evidence "when it has reason to believe that other evidence within its reach will explain away the charge." (Pen. Code, § 939.7.) But this provision does not exhaust the grand jury's investigatory powers. The grand jury has *authority* to summon witnesses simply to gain a fuller understanding of the case. (Pen. Code, § 939.2 [upon request of grand jury, any superior court judge may issue subpoena for witness whose testimony is material in an investigation before the grand jury].)

In an indictment proceeding, the prosecutor's influence over the grand jury is vast, as many courts (e.g., *United States* v. *Seruba* (3d Cir. 1979) 604 F.2d 807, 816) and commentators (see Alschuler, *Preventive Detention* (1986) 85 Mich. L.R. 510, 559; and articles collected in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 590-591 [150 Cal.Rptr. 435, 586 P.2d 916])

---

[4]The superior court instructed the grand jury in these words: "The law specifically provides that an indictment should be found when all of the evidence before you, taken together, if unexplained or uncontradicted, would, in your judgment, provide 'sufficient cause' to believe that a public offense was committed and that the person accused is guilty of it. For 'sufficient cause' there must be enough evidence to support a strong suspicion or probability of (1) the commission of the crime or crimes in question, and (2) the accused's guilt thereof."

have recognized. This was, moreover, a novice grand jury, conducting its first indictment proceeding. When the prosecutor told the grand jurors that they could consider only the evidence that "we" (that is, the prosecution) had presented, the prosecutor denied the very existence of the grand jury's investigatory power. The statement was plainly erroneous and served to squelch any effort by the grand jurors to exercise their statutory right to obtain additional evidence on crucial points in the case.

## IV

Petitioner has demonstrated that the grand jury that indicted her was incorrectly advised as to the standard of proof it was to use and as to its own investigatory powers. But petitioner has not thereby established an entitlement to relief. Under this state's laws, incorrect legal advice to the grand jury is not a permissible basis for setting aside an indictment. Because petitioner's claims are procedurally barred, I concur in affirming the judgment of the Court of Appeal.

Petitioner's application for a rehearing was denied February 11, 1993, and the opinion was modified to read as printed above. Mosk, J., and Kennard, J., were of the opinion that the application should be granted.