Filed 12/9/24 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>PRENTICE ROBINSON,<br><br>      Defendant and Appellant. | C098299<br><br>(Super. Ct. Nos. STK-CR-FE-2011-0005529, SF117220A)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of San Joaquin County, Patrick J, Smalling, Judge.  Affirmed.

       J. Edward Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

       Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Caitlin Franzen, Deputy Attorneys General, for Plaintiff and Respondent.

       Ronald J, Freitas, District Attorney (San Joaquin), Nicole Devencenzi, Deputy District Attorney, for the District Attorney for the County of San Joaquin as Amicus Curiae.

1

THE COURT:

It is ordered that the published opinion filed herein on November 18, 2024, be modified as follows:

1. In the last sentence of the paragraph before the Factual and Procedural Background in the majority opinion add the words " 's second and third arguments," so the sentence now reads "We agree with amicus curiae's second and third arguments and will affirm."

2. After the last sentence of the paragraph before the Factual and Procedural Background in the majority opinion, which as modified above now reads "We agree with amicus curiae's second and third arguments and will affirm," add as footnote No. 2 the following footnote, which will require renumbering of all subsequent footnotes in the majority opinion:

> Robinson's petition for rehearing highlights the Second Appellate District, Division Two's decision in *People v. Ocobachi* (2024) 105 Cal.App.5th 1174, which was issued after oral argument, but before the publication of the opinion in this matter. This opinion found the trial court erred in relying upon grand jury testimony to establish the defendant was ineligible for relief under section 1172.6, concluding such evidence was inadmissible. (*Ocobachi*, at pp. 1177, 1181-1182.) Having reviewed *Ocobachi*, we are unpersuaded, and for the reasons stated herein, conclude the trial court did not error in considering grand jury testimony at Robinson's section 1172.6, subdivision (d) merits hearing.

There is no change in the judgment.

The petition for rehearing is denied.

BY THE COURT:

_____/s/_____
EARL, P. J.

_____/s/_____
HULL, J.

I concur in the denial of the petition for rehearing.

_____/s/_____
FEINBERG, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C098299 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CR-FE-2011-0005529, SF117220A) |
| v. | |
| PRENTICE ROBINSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Patrick J, Smalling, Judge.  Affirmed.

J. Edward Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Caitlin Franzen, Deputy Attorneys General, for Plaintiff and Respondent.

Ronald J, Freitas, District Attorney (San Joaquin), Nicole Devencenzi, Deputy District Attorney, for the District Attorney for the County of San Joaquin as Amicus Curiae.

On March 30, 2011, a grand jury issued a felony indictment against defendant Prentice Robinson for several criminal counts occurring between January 6, 2011, and February 5, 2011.  Robinson subsequently pleaded no contest to multiple charges, including attempted murder (Pen. Code, §§ 664/187),[1] and admitted numerous enhancing allegations, including that he personally used a firearm during the attempted murder (§ 12022.53, subd. (b)).  In exchange, he received an aggregate prison sentence of 22 years.  In January of 2022, Robinson filed a petition for resentencing.  The court appointed counsel and, ultimately, Robinson received an evidentiary hearing on his resentencing request.  Robinson appeals the trial court's denial of this petition, arguing the trial court erred in considering testimony from grand jury transcripts.  The People concur that reversal is required because the grand jury testimony is inadmissible hearsay, and, they argue, grand jury proceedings fall outside of the plain meaning of "evidence previously admitted at any prior hearing or trial," but they disagree on the proper remedy.

Amicus curiae, San Joaquin County District Attorney, argues that the grand jury transcripts (including the testimony reflected therein):  (1) were part of Robinson's record of conviction, (2) were included within the hearsay exception found in section 1172.6, subdivision (d)(3), and (3) were not excludable either on the basis of the Sixth Amendment right to confrontation or the due process clause.  We agree with amicus curiae and will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Following grand jury proceedings, the People filed an indictment charging Robinson with 19 criminal counts, including, for our purposes, attempted willful, deliberate murder (§§ 664/187 — count 15).  The indictment further alleged that Robinson:  personally used and intentionally discharged a firearm (§ 12022.53, subd. (b)

---

[1]     Undesignated statutory references are to the Penal Code.

— counts 1-4, 6-15, 17; § 12022.5, subd. (a)(1) — count 16), and other prior criminal conviction enhancements.

In 2011, Robinson pleaded no contest to all counts and admitted the truth of many of the enhancing allegations, including, in pertinent part, that he personally used a firearm in the commission of the attempted murder (§ 12022.53, subd. (b)). The remaining enhancements, including that he personally and intentionally discharged a firearm in the commission of the attempted murder, were stricken. After explaining the implications of Robinson's anticipated no contest pleas, the trial court stated, "The Court will find a factual basis for the plea as contained in the preliminary hearing transcript — grand jury transcripts." The parties did not stipulate to the factual basis or otherwise comment on the court's use of the grand jury transcripts.

The trial court subsequently sentenced Robinson to an aggregate prison term of 22 years. The court modified this sentence in 2017, correcting errors identified by the Department of Corrections and Rehabilitation that are not pertinent to the issues in the appeal.

Thereafter, on January 31, 2022, Robinson filed a petition for resentencing, which the People opposed, arguing Robinson was the sole perpetrator/actual attempted killer and the grand jury was not presented with instructions under the natural and probable consequences doctrine, making him ineligible for relief. Robinson disagreed, arguing the grand jury proceedings should not be considered, and in any event, did not establish his ineligibility as a matter of law. On October 17, 2022, the trial court determined Robinson had made a prima facie showing of eligibility for relief and issued an order to show cause.

Prior to the order to show cause hearing, the trial court ruled — over Robinson's objection — that it would consider the entirety of grand jury transcripts, including the grand jury instructions, as part of the order to show cause hearing subject to specific evidentiary objections Robinson might bring in a written motion. Robinson's subsequent

5

motion reiterated his objection to the court considering any of the grand jury transcripts. He then argued the court's consideration of the grand jury information should be limited to the evidence concerning the robbery at the restaurant, including the testimony of three individuals relevant thereto.

The order to show cause hearing took place on April 3, 2023. At the outset of the hearing, the trial court reiterated its ruling that the grand jury transcripts would be admissible as part of the record of conviction. Those transcripts were the factual basis for Robinson's plea, and their exclusion would "profoundly frustrate" the resentencing process.

*The Testimony from the Grand Jury Transcripts*

We summarize only the grand jury testimony of the two victims (S.C. & G.C.) relied upon by the trial court in its ultimate determination on Robinson's petition.[2]

S.C. testified she worked at the restaurant with G.C. She took orders, while G.C. cooked in the back. It had been a busy day with lots of customers. S.C.'s in-laws were eating at the restaurant when Robinson came in, ordered pork noodle soup, and paid. As S.C.'s in-laws took their dishes into the back of the restaurant, Robinson pointed a gun at her and demanded money. G.C. was making the noodle soup and turned to come into the front when Robinson shot at him, hitting the door to the kitchen. Robinson then fled with the money.

G.C. testified he was working in the kitchen when the restaurant was robbed. S.C. was working up front when G.C. learned of the robbery and rushed to see what was

---

[2] The People also offered the grand jury testimony of Delbert Rivers, a frequent accomplice in other robberies Robinson had committed. However, in its ruling the trial court stated: "Delbert is not a credible witness either. However, there is more than enough evidence in this record to support a finding beyond a reasonable doubt that Mr. Robinson was the perpetrator of the robbery and attempted murder without accepting as true Delbert's grand jury testimony regarding the Hong Kong Deli robbery and shooting." Thus, we do not recount Rivers's testimony.

happening.  When G.C. reached the door, someone fired a gun at him.  G.C. could not see the shooter clearly because of the age of the plastic window in the door but could tell that the shooter was Black, holding a gun, and aiming directly for him.  Had Robinson aimed a little higher the bullet would have gone through the plastic and hit G.C.  G.C. was carrying a knife at his waist from cutting things up, but never threatened Robinson with it.  The bullet was later found in the dining area of the restaurant.

### *The People's Other Evidence*

The People also presented the live testimony of Detective Larry Naso, who investigated Robinson in relation to a series of armed robberies, including the attempted murder at the restaurant.  As part of that investigation, Detective Naso showed S.C. a photo lineup, and she identified Robinson as the perpetrator.  S.C. circled, initialed, and dated Robinson's photograph in Detective Naso's presence, confirming that identification.  The People offered this photo lineup as People's exhibit No. 1.  Detective Naso also identified an individual named Delbert Rivers as a potential suspect in some of the robberies, but he was not a suspect in the restaurant robbery.  Detective Naso identified a photograph of Rivers, which was offered as People's exhibit No. 2.  People's exhibit Nos. 1 and 2 were admitted into evidence without objection.

On cross-examination, Detective Naso testified that S.C. had identified Robinson "pretty quickly," and Robinson's photograph in the lineup was an accurate representation of the way he looked in surveillance videos from other robberies as well as the way he looked the day following S.C.'s identification.  However, People's exhibit No. 1 did not show Robinson's tattoo near his eye.  S.C. was not shown a photograph of Rivers.  While Robinson had aged over the years and acquired some new tattoos, Detective Naso confidently identified him as the person who had been identified in the photo lineup.

*Robinson's Evidence*

Robinson testified in support of his resentencing request that on the day of the restaurant robbery, Rivers asked him to do a robbery with him.[3] Robinson agreed to the robbery and gave Rivers his gun. The pair walked approximately 30 minutes to the restaurant. Robinson checked through the window for how many people were inside and locked eyes with the woman at the counter. Rivers told Robinson to act as a lookout and entered the restaurant to do the robbery. He still had Robinson's gun. Rivers came out several minutes later, and they ran across the street. Rivers shared the robbery proceeds with Robinson. Robinson denied pointing or firing a gun at anyone at the restaurant.

On cross-examination, Robinson admitted committing a handful of robberies by himself in January and February of 2011. Robinson also committed robberies with Rivers. Robinson admitted he was armed with a gun during these robberies, as confirmed by witness accounts and surveillance video. Robinson denied threatening to kill or shoot Rivers during the course of two different robberies, despite contrary witness accounts. When arrested on February 5, 2011, Robinson denied any involvement in the robberies or attempted murder. Robinson denied going into the restaurant with a gun, despite S.C.'s identification. Robinson had been adjudicated of possession of a stolen vehicle at age 15 in 2005. He was also convicted of escaping from jail as well as robbery in 2009, for which he served a two-year sentence.

Robinson pleaded no contest to attempted murder and admitted the personal use of a gun enhancement, despite claiming to not have committed the crime, because of the sentencing exposure he was facing. Nonetheless, Robinson admitted helping Rivers commit the crimes at the restaurant.

---

[3] This evidence was admitted solely to explain Robinson's actions and not for its truth.

Following the close of evidence, the People argued Robinson was the actual shooter at the restaurant, consistent with the evidence (including Robinson's testimony) showing that in every other robbery committed with Rivers, Robinson was the individual who wielded the gun. Witnesses confirmed Robinson made threats to Rivers during the other robberies and, regardless of whether the court believed Rivers, S.C. identified Robinson as the perpetrator and confirmed in her grand jury testimony that Robinson shot the gun. Specifically, Robinson pointed a gun at her, demanded money, and then shot at G.C. who had begun to exit the kitchen. A comparison of the pictures of Robinson and Rivers showed they "look very different."

Robinson's attorney countered, arguing S.C. misidentified Robinson based upon seeing him through the window, that it was a "cross-racial ID," and Robinson's testimony created a reasonable doubt as to his guilt. Moreover, Robinson argued Rivers's testimony was not credible, and it was actually Rivers (and not Robinson) who committed the attempted murder and robbery at the restaurant.

Reconvening later that day, the trial court noted it was "taking judicial notice of the indictment filed on March 30th, 2011; the grand jury transcript dated March 25th, 2011, specifically related to the testimony of [S.C.] and [G.C.]; and the March 29th, 2011, testimony related to Mr. Delbert Rivers; also, the change of plea transcript, which is dated October 25th, 2011; and the sentencing transcript, which is dated February 3rd, 2012." While the court found Rivers's testimony was not credible, it nonetheless found the evidence that Robinson was the direct perpetrator of the attempted murder "overwhelming" and that the People had established that he committed the robbery and attempted murder beyond a reasonable doubt. The court, therefore, denied Robinson's petition for resentencing. Robinson timely appealed.

## DISCUSSION

### I

### *Legal Background*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Relevant here, the bill eliminated the natural and probable consequences theory of murder, while keeping intact direct aider and abettor liability. (*People v. Gentile* (2020) 10 Cal.5th 830, 846; *People v. Curiel* (2023) 15 Cal.5th 433, 448.)

Senate Bill 1437 also added former section 1170.95 (now § 1172.6),[4] "which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*People v. Curiel, supra*, 15 Cal.5th at p. 449.) The Legislature has since "amended the statute to expand the population of eligible offenders, codify certain aspects of [the Supreme Court's] decision in [*People v. Lewis* (2021) 11 Cal.5th 952], and clarify the procedure and burden of proof at the evidentiary hearing stage of proceedings. (Stats. 2021, ch. 551, § 1.)" (*Ibid.*) Thus, with Senate Bill No. 775 (2021-2022 Reg. Sess.), the Legislature expanded the scope of Senate Bill 1437 to include those convicted of attempted murder and manslaughter. (Stats. 2021, ch. 551, § 2.)

---

[4] Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Although Robinson filed his petition under former section 1170.95, we refer to the current section 1172.6 throughout the rest of this opinion.

10

Section 1172.6 requires a prima facie determination. (§ 1172.6, subd. (c).) Under subdivision (c), the trial court must appoint the petitioner counsel if requested, receive briefing from the parties, and determine whether "the petitioner makes a prima facie showing that the petitioner is entitled to relief." (*Ibid*.) If the trial court determines the petitioner has made a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d)(1); *People v. Curiel, supra*, 15 Cal.5th at p. 450.) At this hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) Both the prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. (*Ibid*.) The trial court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (*Ibid*.)

Ordinarily, we would review a trial court's denial of a section 1172.6 petition for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) However, where there is an issue of statutory interpretation our review is de novo. (*People v. Lewis, supra*, 11 Cal.5th at p. 961.) Likewise, we consider questions involving the applicability of constitutional rights de novo. (*People v. Cromer* (2001) 24 Cal.4th 889, 894-896.)

II

*The Grand Jury Transcripts*

Robinson argues the trial court erred in admitting the testimony from the grand jury transcripts because the testimony constituted inadmissible hearsay and because the transcripts are not part of the record of conviction. We disagree on the first count and need not reach the second.

As originally chaptered, then-section 1170.95, subdivision (d)(3) provided that "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof

11

shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.  If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.  *The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.*"  (Former § 1170.95, subd. (d)(3), added by Stats. 2018, ch. 1015, § 4, italics added.)  However, the statute was amended in 2021 and the above italicized language was stricken and subdivision (d)(3) now reads in relevant part, as follows:  "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§1172.6, subd. (d)(3).)[5]

Here, Robinson argues the testimony from the grand jury transcripts is not admissible under the rules as set forth in section 1172.6, subdivision (d)(3) because the

---

**5**     We disagree with Robinson's suggestion that by amending section 1172.6 to replace "record of conviction" with its current language the Legislature intended to remove the record of conviction "as a resource for prosecutors."  We believe a better interpretation of this change was to narrow the scope of the record of conviction subject to admission at the evidentiary hearing.  (See, e.g., *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1159 (*Davenport*) [acknowledging the amendment to § 1172.6 narrowed the portions of the record of conviction automatically admissible at the merits hearing].)

transcripts constitute hearsay inadmissible under the Evidence Code and run afoul of his right to confrontation as protected by the Sixth Amendment. The People agree with Robinson's first proposition, stating, "In this case, there is nothing in the record to suggest that the transcripts were admissible under an exception to the hearsay rule. Absent such an exception, the transcripts were inadmissible hearsay." We conclude they both have it wrong.

" ' " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " ' [Citation.] ' "[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " ' " (*People v. Lewis, supra*, 11 Cal.5th at p. 961.)

We find the appropriate interpretation of section 1172.6, subdivision (d)(3)'s rules for admitting evidence at a merits hearing is as analyzed in *Davenport, supra*, 95 Cal.App.5th 1150, which considered whether the trial court erred in admitting percipient witness testimony from a preliminary hearing at the section 1172.6 subdivision (d) merits hearing. (*Davenport*, at p. 1153.) *Davenport* began by noting that while the express language of the statute did not state a preliminary hearing transcript was admissible, its general admissibility was nonetheless compelled by a plain reading of the statute. (*Id*. at p. 1158.)

First, section 1172.6, subdivision (d)(3) "unambiguously provides that a trial court ruling on the merits of a resentencing petition 'may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including

13

witness testimony.' " (*Davenport, supra*, 95 Cal.App.5th at p. 1158.) Second, the admission of preliminary hearing testimony was expressly contemplated in light of the carve-out requiring preliminary hearing evidence admitted under section 872 to have a separate hearsay exception. (*Davenport*, at p. 1158.) Third, *Davenport* reasoned, "In effect, what section 1172.6 subdivision (d)(3) does is create a new hearsay exception applicable specifically to merits hearings in section 1172.6 resentencing proceedings." (*Ibid*.)

*Davenport* summarized the rules of admission as follows: "The rules of evidence apply to hearings held under section 1172.6, subdivision (d); under those rules, hearsay is inadmissible in the absence of an exception; and the pertinent exception here is the clause in section 1172.6, subdivision (d)(3) stating that 'except that the court may consider evidence admitted at any prior hearing . . . .' " (*Davenport, supra*, 95 Cal.App.5th at p. 1158.) We agree that section 1172.6, subdivision (d)(3) created a merits hearing specific hearsay exception for " 'evidence previously admitted at any prior hearing or trial that is admissible under current law.' " (*People v. Palacios* (2024) 101 Cal.App.5th 942, 952.)

Moreover, we agree with *Davenport* and *Palacios* that "admissible under current law" means that the basis for that evidence's previous admission remains a valid basis under current law. (See *Davenport, supra*, 95 Cal.App.5th at pp. 1158-1159 [rejecting that the evidence has to be admissible in the new hearing under the Evid. Code because that would render surplusage the language following "except"]; accord, *People v. Palacios, supra*, 101 Cal.App.5th at pp. 951-952.)

We also find persuasive the analysis in *People v. Cody* (2023) 92 Cal.App.5th 87. In denying Cody's section 1172.6 petition at the evidentiary hearing, the trial court relied on the original trial transcripts. Cody argued that under section 1172.6, the Legislature intended that when a trial court conducts an evidentiary hearing, the prosecution must always first make a showing that a witness is unavailable before his or her former

14

testimony at trial can be admitted into evidence at the evidentiary hearing. (*Cody*, at p. 103.) In interpreting the relevant language in section 1172.6 the court in *Cody* reasoned that " 'The admission of evidence in the hearing shall be governed by the Evidence Code . . . .' (§ 1172.6, subd. (d)(3).) If the Legislature had stopped there, then we would likely agree with Cody's interpretation of the statute. That is, we would find the prosecution is required to make a showing of witness unavailability under Evidence Code section 1291, before the trial court could admit the former testimony of witnesses at the evidentiary hearing. However, the law has an explicit exception that provides for the admission of former testimony: 'The admission of evidence in the hearing shall be governed by the Evidence Code, *except that* the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including *witness testimony* . . . .' (§ 1172.6, subd. (d)(3), italics added.)" (*Cody*, at p. 104.) The court reasoned further that "Were we to adopt Cody's interpretation of section 1172.6, it would mean we would have to disregard the statute's plain language. Further, it would mean that all section 1172.6 evidentiary hearings would effectively become new court trials. As another appellate court recently stated, that is plainly not what the Legislature intended. (See *People v. Clements* [(2022)] 75 Cal.App.5th [276,] 297 [the Legislature did not choose to grant qualifying offenders under § 1172.6 a new trial, but rather the Legislature chose a procedure 'requiring trial judges to decide the critical factual questions based — at least in some cases — on a cold record'].)" (*Ibid*.) So too here. Robinson attempts to persuade us that "admissible under current law" means the evidence from the grand jury hearing must again satisfy the rules of evidence at the evidentiary hearing. We part ways in this regard and agree again with *Davenport*, "we think the most natural reading of those words [is admissible under current law] is that the basis for admission of testimony *at the hearing or trial in which it was previously admitted must remain a valid basis for admitting the testimony* 'under current law.' " (*Davenport,*

15

*supra*, 95 Cal.App.5th at p. 1158.) To conclude otherwise would render the exception for previously admitted testimony, superfluous.

Nonetheless, the question whether the grand jury proceeding should fall under "any prior hearing" remains, as *Davenport* considered preliminary hearing testimony (*Davenport, supra*, 95 Cal.App.5th at p. 1153) and this matter concerns grand jury testimony. In his supplemental reply brief, Robinson offers a distinction between grand jury proceedings and preliminary hearings, arguing the former "occurs prior to a criminal prosecution and is separate from the trial court's adjudicative proceedings." The People concur the grand jury proceedings do not fall under "any prior hearing," reasoning they are a separate proceeding. Again, the parties do not persuade us.

While we acknowledge that grand jury proceedings have been determined to be part of the charging process rather than the adjudicative process (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026), we believe that is, for purposes of the "prior hearing" language in section 1172.6, a distinction without a difference. Because the goal of each is to determine probable cause rather than guilt, grand jury proceedings are similar to preliminary hearing proceedings, which have been determined to be a proper "prior hearing" for purposes of section 1172.6. (See *Davenport, supra*, 95 Cal.App.5th at p. 1158 [§ 1172.6, subd. (d)(3) expressly contemplates that preliminary hearing testimony will be considered at an evidentiary hearing].)

All felony cases initiate by either grand jury indictment or the filing of an information following a preliminary hearing. (*People v. Petrilli* (2014) 226 Cal.App.4th 814, 823-824; see also Cal. Const. art. I, §14; § 737.) Section 939.8 provides that "The grand jury shall find an indictment when all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, warrant a conviction by a trial jury." Our Supreme Court has explained that "under the statutory scheme, it is the grand jury's function to determine whether probable cause exists to accuse a defendant of a particular crime. . . . [¶] . . . [¶] In our view, the grand jury's function in determining

16

whether to return an indictment is analogous to that of a magistrate deciding whether to bind a defendant over to the superior court on a criminal complaint. Like the magistrate, the grand jury must determine whether sufficient evidence has been presented to support holding a defendant to answer on a criminal complaint." (*Cummiskey v. Superior Court, supra*, 3 Cal.4th at pp. 1026-1027.) In the current matter, and like the preliminary hearing process, witnesses testified under oath as documented by a court reporter, and the grand jury, acting similar to a magistrate, then issued a criminal indictment directly resulting in the initiation of this criminal case.

We also find sufficient guardrails exist within the statutory scheme to enhance reliability and assist a trial court's assessment of grand jury testimony for purposes of a resentencing hearing. Evidence submitted to a grand jury is limited by section 939.6, subdivision (a) to evidence that is "(1) Given by witnesses produced and sworn before the grand jury; [¶] (2) Furnished by writings, material objects, or other things presented to the senses; or [¶] (3) Contained in a deposition that is admissible under subdivision 3 of Section 686 [to the extent it is otherwise admissible under the law of this state]." Section 939.6, subdivision (b) provides that "the grand jury shall not receive any evidence except that which would be admissible over objection at the trial of a criminal action." The prosecutor presenting evidence at a grand jury proceeding is under obligation, upon threat of dismissal, to inform the grand jury of any exculpatory evidence. (See § 939.71.) The prosecutor must also further inform the grand jury of their right to exercise its power under section 939.7, to order additional evidence produced. (See § 939.71.) Lastly, a defendant may challenge the sufficiency or competency of grand jury testimony before a judge by moving to set aside the indictment pursuant to section 995. (See *Mason v. Superior Court* (2015) 242 Cal.App.4th 773, 787.)

One additional protection deserves pointing out. Since the primary purpose of introducing evidence at a section 1172.6 hearing is to determine a petitioner's role in the crime of which he or she was convicted, it seems to us that reliance on grand jury

testimony assists in accomplishing that purpose. Should a petitioner wish to challenge that evidence, section 1172.6 allows him or her to do so by offering new or additional evidence at the evidentiary hearing. For example, in this case, Robinson himself could have presented evidence to refute that established by the witnesses at the grand jury hearing.

We also find that trial judges are well-versed in judging the credibility of evidence and attributing whatever weight they deem appropriate to "prior hearing" testimony. (See *People v. Njoku* (2023) 95 Cal.App.5th 27, 44 (*Njoku*) [it is possible to reach an opinion about what actually happened from a cold record].) In fact, the trial court here made credibility and factual determinations based on live testimony and transcripts.

While it may be tempting to say that a defendant's lack of participation in a grand jury proceeding renders the proceeding not a "hearing" for purposes of section 1172.6, we believe such is misguided. We are reminded that the section 1172.6 resentencing hearing is not a trial, criminal prosecution, or subsequent retrial. (*People v. Myles* (2021) 69 Cal.App.5th 688, 706.) It is a postconviction collateral proceeding, the scope of which is limited to the issues made relevant by the amended law of murder. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 227.) Many of the protections under the Sixth Amendment do not apply to the petitioning process under section 1172.6. (See *People v. Schell* (2022) 84 Cal.App.5th 437, 444 ["section 1172.6 is an act of lenity in which the petitioner has no Sixth Amendment right to a jury trial"]; *People v. Silva* (2021) 72 Cal.App.5th 505, 531 & fn. 10 [right to confrontation under the 6th Amend. did not apply to the defendant's resentencing under § 1172.6, subd. (e)]; see also *Njoku, supra*, 95 Cal.App.5th at pp. 44-45 ["A petitioner under section 1172.6 does not possess many of the constitutional rights afforded to a criminal defendant at trial"]; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 589 [same].)

We also subscribe to the view that had the Legislature intended to exclude transcripts of grand jury testimony from the hearsay exception contained within section

1172.6, subdivision (d)(3), it could have created a carve out similar to the one for section 872 preliminary hearing hearsay evidence. (§ 1172.6, subd. (d)(3) [requiring a separate hearsay exception for § 872, subd. (b) evidence offered at a preliminary hearing].) It did not. In fact, at the time the Legislature amended section 1172.6 to include the carve-out for section 872, subdivision (b) evidence, existing law provided for the admission of a similar type of hearsay evidence permitted under section 872, subdivision (b) in grand jury hearings. Section 939.6 provides for evidence related to the foundation for admissibility into evidence of documents, exhibits, records, and other items of physical evidence to be based "in whole or in part upon the sworn testimony of a law enforcement officer relating the statement of a declarant made out of court and offered for the truth of the matter asserted," provided the testifying officer has "either five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training that includes training in the investigation and reporting of cases and testifying at preliminary hearings." (§ 939.6, subd. (c).) This language is near identical to language in section 872, subdivision (b). We disagree that the failure of the Legislature to include a similar carve-out for law enforcement officer hearsay testimony in grand jury proceedings suggests that the Legislature did not contemplate that grand jury transcripts would be admissible in a section 1172.6 evidentiary hearing. Rather, we believe it reflects the contrary; that it was aware of existing statutes when it created the carve-out for section 872 subdivision (b) and if it meant to exclude grand jury testimony, it would have done so. (See *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 212 ["The Legislature is deemed to be aware of existing statutes, and we assume that it amends a statute in light of those preexisting statutes. (*People v. Yartz* [(2005)] 37 Cal.4th [529,] 538; *People v. Overstreet* (1986) 42 Cal.3d 891, 897)"].) Similarly, had the Legislature intended that only prior hearings that are adjudicative are permissible under the statute, it could have said so. We do not read that requirement into the statute.

19

When considering the procedural protections that accompany grand jury proceedings, balanced against the purpose of section 1172.6 and the Legislature's obvious intent to avoid full-scale retrials (*People v. Strong* (2022) 13 Cal.5th 698, 715 ["Had the Legislature intended to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing, we expect it would have said so more plainly"]), we conclude that testimony from grand jury proceedings constitutes evidence previously admitted at "any prior hearing" as proscribed by section 1172.6, subdivision (d)(3).

## III

### *The Sixth Amendment and Due Process*

Robinson argues the trial court's consideration of the testimony from the grand jury transcripts violated his right to confrontation protected by the Sixth Amendment to the United States Constitution. We are not persuaded, and as we shall explain, the trial court's consideration of the testimony also complied with due process.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." (U.S. Const., 6th Amend.)

However, "a convicted person litigating a section [1172.6] petition does not enjoy the rights that the Sixth Amendment guarantees to criminal defendants who have not yet suffered a final conviction." (*People v. James* (2021) 63 Cal.App.5th 604, 610.) Rather, section 1172.6 is a voluntary sentencing procedure derived from "an act of legislative lenity, not a new criminal prosecution." (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1067-1068.) Accordingly, a defendant has no Sixth Amendment trial rights. (See, e.g.,

20

*James*, at pp. 608-610 [no right to a jury trial at evidentiary hearing]; *People v. Howard* (2020) 50 Cal.App.5th 727, 740 [6th Amend. does not apply to redesignating offenses]; accord, *People v. Silva, supra*, 72 Cal.App.5th at p. 520; but see *People v. Foley* (2023) 97 Cal.App.5th 653, 659-660 [because merits hearing is a critical stage of criminal process, 6th Amend. right to conflict-free counsel applies].)

As explained in *James*, the Constitution did not require the Legislature to authorize resentencing relief, nor did it compel a jury trial as part of that procedure. (*People v. James, supra*, 63 Cal.App.5th at p. 609.) Accordingly, the Legislature was free to condition resentencing relief on the nonjury procedure contained within the statute. (*Id.* at pp. 610-611.) Like the right to a jury trial, the Sixth Amendment right to confrontation does not apply in the context of a section 1172.6 hearing. We concur with *James* that if the Constitution required new jury trials with the full panoply of rights protected thereby, the Legislature might have reconsidered its decision to grant retroactive relief. (*James*, at p. 611.)

This is not to suggest that Robinson is without any constitutional rights at the section 1172.6, subdivision (d) merits hearing. However, those rights are grounded in Robinson's procedural due process rights to a full and fair opportunity to contest the People's opposition to his resentencing petition. (*People v. Schell, supra*, 84 Cal.App.5th at p. 444.) In evaluating whether Robinson's due process rights were violated at the section 1172.6 hearing, we consider " '[T]he private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335.)" (*Njoku, supra*, 95 Cal.App.5th at p. 45.)

Here, the private interest is whether Robinson is entitled to a reduced sentence after having already admitted to having committed attempted murder. (§ 1172.6, subds. (a), (d); *Njoku, supra*, 95 Cal.App.5th at p. 46.)

As to the second factor, the section 1172.6 procedure provided Robinson counsel (§ 1172.6, subd. (b)(3)), and the right to present new evidence at an evidentiary hearing wherein the People bore the burden of establishing ineligibility for resentencing beyond a reasonable doubt (§ 1172.6, subd. (d)(3)). The procedure also limited the admission of testimony from any prior hearing to assure the basis for admitting that testimony remained a valid one under current law. (*Ibid*.; *Davenport, supra*, 95 Cal.App.5th at pp. 1158-1159.) Robinson took advantage of these rights, testifying at the hearing that he was not the individual who committed the attempted murder and his counsel argued the victim's identification of him was tainted as a cross-racial identification. Further, as part of the new evidence that could have been provided at this hearing, Robinson would have been permitted to subpoena the individuals who testified during the grand jury proceedings (§ 1172.6, subd. (d)(3)), and thus, the procedure provided an opportunity to challenge the grand jury testimony.[6]

Finally, regarding the government's interest, the administrative burden the government would face if required to present live testimony in lieu of the grand jury

---

[6]     We further note that while Robinson was not allowed to cross-examine the witnesses at the grand jury proceedings, the prosecution did have a statutory duty to present exculpatory evidence to them. (*Cummiskey v. Superior Court, supra*, 3 Cal.4th at p. 1033; *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 250-251, 255 [issuing writ of prohibition against indictment where prosecutor failed to present the defendant's exculpatory testimony from former preliminary hearing; prosecutor had duty to present that evidence]; *id.* at p. 255 ["We hold, therefore, that when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated under section 939.7 to inform the grand jury of its nature and existence, so that the grand jury may exercise its power under the statute to order the evidence produced"].) This lessens concerns that the grand jury testimony unfairly presented only one side of the story.

testimony would be immense.  (See *Njoku, supra*, 95 Cal.App.5th at pp. 46-47 [analyzing burdens associated with requiring live testimony instead of allowing a decision on the cold record].)  In arriving at the section 1172.6 procedure, " '[t]he Legislature landed on that compromise as a way of extending the ameliorative benefits of its redefinition of murder to people previously convicted under prior law, which [it] judged to be too harsh.' " (*Njoku*, at p. 44.)  This compromise was required because requiring trials with the presentation of live testimony would have been enormously expensive, and " 'the chances of obtaining live testimony from witnesses who remembered the events from years or decades earlier is small.' " (*Ibid*.)  However, rather than refusing ameliorative benefits to defendants convicted under the old law, the Legislature created a procedure wherein trial judges could decide critical factual questions on a cold record, and the parties would have the opportunity to present live testimony.  (*Ibid*.)

Having balanced these factors, we find the risk of erroneous deprivation caused by Robinson's inability to have originally cross-examined the witnesses from the grand jury hearing is countered by the procedural safeguards inherent in the section 1172.6 hearing, including Robinson's ability to present new evidence (including but not limited to his calling those witnesses himself).  (*Njoku, supra*, 95 Cal.App.5th at pp. 45-47 [due process not violated by allowing trial court to determine § 1172.6 merits on a cold record].)  We find this is an appropriate balance in light of the competing interests at stake.

23

## DISPOSITION

The judgment is affirmed.

_____/s/_____
EARL, P. J.

I concur:

_____/s/_____
HULL, J.

FEINBERG, J., Dissenting.

I agree with the majority's conclusion that Penal Code section 1172.6, subdivision (d)(3) creates a specific hearsay exception for "evidence previously admitted at any prior hearing or trial that is admissible under current law."[1] (Maj. opn. *ante*, at p. 12.) I also agree that "admissible under current law" means that the basis for the evidence's previous admission remains valid under current law. (Maj. opn. *ante*, at p. 12; see *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158.) But I respectfully disagree that testimony received in a grand jury proceeding qualifies as "evidence previously admitted at any prior hearing or trial" within the meaning of section 1172.6, subdivision (d)(3). Although the statute does not expressly define that phrase, the text, context, and purpose of the law together point toward the conclusion that it does not encompass evidence that the prosecution presents to a grand jury.

Beginning with the language "any prior hearing" (§ 1172.6, subd. (d)(3)), the word "hearing," read in isolation, is susceptible to different meanings. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1247-1248; *Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 272, fn. 12.) One definition found in the case law broadly includes "a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence." (*People v. Pennington* (1967) 66 Cal.2d 508, 521; see also *In re Cook* (2019) 7 Cal.5th 439, 449, fn. 3.) Under that definition, a grand jury proceeding could qualify as a "hearing," in that it involves the presentation of evidence to the end of determining whether probable cause supports the return of an indictment. (§§ 889, 917, 939.8; *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1027.)

A general and potentially elastic term like "hearing," however, draws meaning from its context (*Lewis v. Superior Court*, *supra*, 19 Cal.4th at p. 1249), and here the

---

**1**  Undesignated statutory references are to the Penal Code.

context suggests that the term as used in section 1172.6, subdivision (d)(3) does not extend to a grand jury proceeding. With limited exception (§§ 923, subd. (c)(1), 939.7), in the extensive statutory scheme defining and governing grand juries, the Legislature itself has not labeled a grand jury proceeding a "hearing." (See § 888 et seq.) Rather, grand juries convene in "sessions" (§§ 934, 935, 938, 939, 939.1) or "proceedings" (§§ 891, 939.21; see Pen. Code pt. 2, tit. 4, chs. 1-3, § 888 et seq. [entitled "Grand Jury Proceedings"]).

Moreover, grand jury sessions or proceedings are fundamentally different from the hearings and trials that are undisputedly covered by section 1172.6, subdivision (d)(3), such as preliminary hearings or criminal trials. (See *People v. Davenport*, *supra*, 95 Cal.App.5th at p. 1158 [preliminary hearing testimony]; *People v. Cody* (2023) 92 Cal.App.5th 87, 101-104 [testimony at jury trial].) The grand jury's charge is to "investigate" and "inquire." (§§ 888, 917, 918, 939.6.) It "serves as part of the charging process of criminal procedure, not the adjudicative process that is the province of the courts or trial jury." (*Cummiskey v. Superior Court*, *supra*, 3 Cal.4th at p. 1026, italics omitted.) It is "investigatory, not adversarial." (*People v. Petrilli* (2014) 226 Cal.App.4th 814, 825.) Unlike a preliminary hearing, a grand jury session "is not the same proceeding as a subsequent criminal prosecution." (*Ibid.*, italics omitted.) Unlike a preliminary hearing or trial, the defendant is not a party to a grand jury proceeding, receives no notice of it, and is not entitled to appear. (*Ibid.*; *People v. Superior Court* (*Mouchaourab*) (2000) 78 Cal.App.4th 403, 415.) And unlike a preliminary hearing or trial, a judge is generally not present during a grand jury session after initially instructing the grand jury as to its duties. (§ 934, subd. (a); *People v. Superior Court* (*Mouchaourab*), at p. 415.) Given these distinct features, I agree with the People that it is unlikely the Legislature grouped grand jury sessions in with preliminary hearings and trials when it used the word "hearing" in the statute. (§ 1172.6, subd. (d)(3).)

2

Turning to the statute's phrase "previously admitted," that language likewise does not fit a grand jury proceeding. (§ 1172.6, subd. (d)(3).) A grand jury does not "admit" evidence. Rather, it "receive[s]" evidence relevant to its investigation. (§ 939.6, subds. (a) & (b).) It is required to "weigh all the evidence submitted to it." (§ 939.7.) No judicial officer makes evidentiary rulings admitting (or declining to admit) evidence for the grand jury's consideration. (§ 934, subd. (a).)

At oral argument, the District Attorney argued that evidence at a grand jury proceeding is "admitted" by the prosecution because a grand jury generally may only receive evidence that would be admissible over objection at a criminal trial. (§ 939.6, subd. (b).) That theory is incompatible with the role prescribed for prosecutors in a grand jury session. Under the statutory scheme, prosecutors "appear before the grand jury for the purpose of giving information or advice." (§ 935.) They "may interrogate witnesses before the grand jury whenever [they] think[] it necessary." (*Ibid.*) And they "inform" the grand jury of the nature and existence of exculpatory evidence of which they are aware. (§ 939.71, subd. (a).) These provisions confirm that, in a grand jury proceeding, the prosecutor acts as the proponent of evidence for the grand jury to consider, not as an adjudicator resolving questions of admissibility. (Compare with Evid. Code, §§ 402, 403 [court resolution of certain admissibility questions].)

A final textual provision reinforces the conclusion that the Legislature did not intend to permit consideration of transcripts from grand jury proceedings in evidentiary hearings under section 1172.6. As the majority notes, the statute generally allows trial courts to consider evidence admitted at prior hearings; but that general rule is subject to an exception for hearsay evidence that was admitted in a preliminary hearing under section 872, subdivision (b). (Maj. opn. *ante*, at p. 12; § 1172.6, subd. (d)(3).) Such evidence "shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).) The Legislature, however, did not provide a carveout for similar hearsay testimony that is

3

permitted in grand jury proceedings. (*Ibid.*; § 939.6, subd. (c) [allowing qualified law enforcement officers to relate out-of-court statements for their truth to lay a foundation for the admission of documents and other evidence].) This omission suggests that the Legislature did not contemplate that grand jury transcripts would be admissible in a section 1172.6 evidentiary hearing in the first place. (See *People v. Davenport*, *supra*, 95 Cal.App.5th at p. 1158 [statute's exclusion of evidence admitted at a preliminary hearing under § 872, subd. (b) shows that the Legislature "expressly contemplate[d] that preliminary hearing testimony in particular will be considered" at a § 1172.6 evidentiary hearing].)

The majority's contrary reading of this provision (maj. opn. *ante*, at pp. 17-18) leads to anomalous results. As the majority discusses, an earlier version of the statute allowed the prosecution to "rely on the record of conviction" in a section 1172.6 evidentiary hearing. (Maj. opn. *ante*, at p. 10; former § 1170.95, subd. (d)(3).) Effective January 1, 2022, the Legislature narrowed that provision to limit the sources of admissible evidence, paying particular attention to hearsay testimony introduced through law enforcement officers that may have been allowed in a preliminary hearing. (Stats. 2021, ch. 551, § 2; see *People v. Davenport*, *supra*, 95 Cal.App.5th at p. 1159.) Given this focus and the legislative goal of tightening the evidentiary rules, it is unlikely that the Legislature intended to make a more generous allowance for hearsay testimony presented at a grand jury proceeding, where witnesses are not subject to cross-examination, than for hearsay testimony adduced at a preliminary hearing, where witnesses are subject to cross-examination.

I agree that in adopting section 1172.6 the Legislature generally sought to avoid full-scale retrials. (Maj. opn. *ante*, at p. 18.) It did so by requiring "trial judges to decide the critical factual questions based—at least in some cases—on a cold record." (*People v. Clements* (2022) 75 Cal.App.5th 276, 297.) But that does not mean that the Legislature intended for the record of prior proceedings to be admissible or sufficient in every case.

4

To the contrary, the Legislature specifically recognized that live testimony and new evidence could be needed or desirable in particular cases. (§ 1172.6, subd. (d)(3) ["[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens"].)

The Legislature also did not elevate efficiency at the expense of fairness and reliability. As the majority explains, section 1172.6, subdivision (d)(3)'s evidentiary provisions seek to balance these sometimes-competing goals. (Maj. opn. *ante*, at pp. 18, 21; see generally *People v. Clements*, *supra*, 75 Cal.App.5th at p. 297.) The majority concludes that allowing grand jury testimony is consistent with this balance because of the procedural protections built into grand jury proceedings. (Maj. opn. *ante*, at p. 15.) Among others, a prosecutor bears important ethical duties when presenting evidence to a grand jury, and a defendant may challenge an indictment after the fact. (§§ 939.6, subd. (b), 939.71, 995; *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 255.) But these protections do not compare with those accompanying ordinary hearings and trials that are part of a criminal proceeding. The prosecution's evidence in a grand jury session is entirely free from adversarial testing. Witnesses are not subject to cross-examination. The defendant is not entitled to be present. Generally, no judicial officer presides over the session. In my view, evidence adduced under these conditions falls short of the standards of fairness and reliability that the Legislature intended when it broadly required section 1172.6 evidentiary hearings to comply with the Evidence Code, subject to a carefully constructed exception for evidence that a judicial officer admitted at a prior hearing or trial.

Nor is it sufficient in my view that a defendant is able to tender his or her own evidence at an evidentiary hearing under section 1172.6, subdivision (d)(3). (Maj. opn. *ante*, at p. 16.) In cases where the section 1172.6 hearing takes place many years after the grand jury proceeding (see maj. opn. *ante*, at p. 21), a defendant's ability to cast doubt on or otherwise challenge the prosecution's evidentiary presentation before the grand jury

5

may be limited. And in any event, the Legislature intended that a defendant's right to introduce new evidence would be only one of a suite of procedural protections—including a limitation on the sorts of evidence that a trial court can consider—that would ensure the fairness and reliability of section 1172.6 evidentiary hearings. (See *People v. Njoku* (2023) 95 Cal.App.5th 27, 46.)

Because witness testimony presented to a grand jury does not qualify as "evidence previously admitted at any prior hearing or trial" (§ 1172.6, subd. (d)(3)) and because the People concede that no other exception to the hearsay rule applies to the grand jury testimony considered in this case, the trial court here erred in considering the transcripts from the grand jury proceeding. Accordingly, I would reverse the trial court's order denying defendant Prentice Robinson's petition for resentencing and remand the matter for a new evidentiary hearing under section 1172.6, subdivision (d)(3).


        /s/
FEINBERG, J.

6