Filed 12/31/25  P. v. Ramos CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAIME RAMOS,<br><br>Defendant and Appellant. | C100012<br><br>(Super. Ct. No.<br>STK-CR-FE-2014-0008834 &<br>SF130263A) |

In 2014, defendant Jaime Ramos and two other men robbed a bank in Stockton at gunpoint.  The trio took hostages and fled in a sport utility vehicle (SUV).  During an extended law enforcement pursuit, one hostage and Ramos's two accomplices were killed.  Ramos pleaded guilty to first degree murder of the hostage, carjacking, and attempted murder of a peace officer.  He also admitted a special circumstance allegation that the murder was committed during the commission of a robbery.  The trial court sentenced Ramos to life without the possibility of parole.

1

In 2022, Ramos filed a petition for resentencing under what is now Penal Code section 1172.6.[1] The trial court held an evidentiary hearing and denied Ramos's petition.

On appeal, Ramos contends that the trial court prejudicially erred in considering grand jury testimony at the evidentiary hearing. The Attorney General concedes the error. Appearing as amicus curiae, the San Joaquin District Attorney argues that the trial court was entitled to consider the grand jury testimony and, even if it was not, the error was harmless. We agree with Ramos and the Attorney General that the grand jury testimony was not admissible at the section 1172.6 evidentiary hearing. We also cannot conclude that the error in considering the evidence was harmless. We therefore reverse the trial court's order denying Ramos's petition and remand for a new evidentiary hearing.

BACKGROUND

Our unpublished decision in Ramos's direct appeal, *People v. Ramos* (Nov. 7, 2018, C084516) (*Ramos*), recites the underlying facts, which we briefly summarize for context only.

In July 2014, Ramos and two other men robbed a bank in Stockton and then fled in an SUV with three hostages. During the high-speed chase that ensued, one of the men repeatedly shot at pursuing officers with an assault rifle. One hostage was shot in the leg and then was pushed or fell out of the SUV. A second hostage jumped out. Both suffered serious injuries. (*Ramos*, *supra*, C084516.)

When the SUV finally came to a stop, police and the three men exchanged more gunfire. The third hostage and two of the men were killed. Police found Ramos under the dead body of the hostage and took him into custody. (*Ramos*, *supra*, C084516.)

The People convened a grand jury, and it returned an indictment charging Ramos and codefendant Pablo Ruvalcaba, who was alleged to have dropped the three men off at

---

[1] Undesignated statutory references are to the Penal Code.

2

the bank, with dozens of counts. The indictment charged Ramos with: murder of a hostage and two coconspirators (§ 187, subd. (a)), robbery (§ 211), kidnapping of one of the hostages (§ 209), attempted premeditated murder of one of the hostages (§§ 187, subd. (a), 664), carjacking (§ 215, subd. (a)), kidnapping two of the hostages to commit robbery (§ 209, subd. (b)(1)), 36 counts of attempted murder of a police officer (§§ 187, subd. (a), 664), possession of an assault weapon (§ 30605, subd. (a)), and criminal street gang activity (§ 186.22, subd. (a)). As to the murder counts, the indictment alleged various special circumstances: multiple murders (§ 190.2, subd. (a)(3)), robbery (§ 190.2, subd. (a)(17)), kidnapping (§ 190.2, subd. (a)(17)(B)), burglary (§ 190.2, subd. (a)(17)(G)), and criminal street gang activity (§ 190.2, subd. (a)(22)). It also alleged numerous enhancements.

In a December 2016 "Statement of Plea Nego[t]iation," the People informed the trial court that Ramos intended to plead guilty to three offenses: an amended murder charge alleging that Ramos had committed felony murder within the meaning of section 189, carjacking, and attempted murder of a peace officer, M.R. At the change of plea hearing, Ramos pleaded guilty to murder "under the felony murder rule" and the two other charges. Ramos also admitted the robbery special circumstance on the murder count. The parties stipulated that the transcript from the grand jury proceeding formed the factual basis for the plea. At the People's request, the trial court dismissed the remaining counts and allegations with a waiver under *People v. Harvey* (1979) 25 Cal.3d 754. The court sentenced Ramos to life without parole for the murder conviction, a concurrent sentence of nine years for the carjacking, and life without parole for the attempted murder count.

In 2022, Ramos filed a petition for resentencing under what is now section 1172.6, asking the trial court to vacate his murder and attempted murder convictions and to resentence him. The People opposed the petition, arguing that, "[d]espite the legal fiction of the plea which was under the felony-murder rule," Ramos could only have been

prosecuted for murder of the hostage under the still-valid provocative act doctrine. The People further maintained that Ramos was convicted of attempted murder as a perpetrator and a direct aider and abettor. The People relied on the grand jury testimony as setting forth the facts of the case and asked the trial court to take judicial notice of Ruvalcaba's motion to quash a search warrant, his motion to suppress evidence, and Ramos's motion to dismiss the indictment pursuant to section 995.

The trial court found that Ramos made a prima facie case for relief and set the matter for an evidentiary hearing. Prior to the evidentiary hearing, Ramos objected to the court's consideration of the grand jury transcripts and the motions of which the People had requested judicial notice.

At the evidentiary hearing, the People argued that Ramos was convicted of a provocative act murder of the hostage and could not be guilty of felony murder because the hostage and the two accomplices were not killed by Ramos or other accomplices but rather by law enforcement gunfire. The People asserted that they would have had to prove malice under a provocative act theory. As to the attempted murder of the police officer, M.R., the People maintained that Ramos was a direct perpetrator because he fired his handgun at the officers or, in the alternative, that he aided and abetted the attempted murder of the officer by handing magazines to an accomplice who was firing an assault weapon at officers during the chase.

The trial court concluded that it would consider the grand jury transcripts in deciding the petition but not the motion to dismiss or the motion to quash. The People withdrew their request for the court to consider Ruvalcaba's motion to suppress.

After hearing argument from counsel, the trial court found that Ramos was not eligible for resentencing because he was prosecuted under the provocative act theory of murder. The court reasoned: "[W]hen the defendants pled to murder in this case, the case law was clear that what the People had to prove was that they had personally harbored malice. And they pled. And that was the state. So this Court is making a

4

finding that they do not qualify to be resentenced because they . . . were not prosecuted under a theory that imputes malice. Because at the time of the plea, case law and CALCRIMs were clear that the People had to prove malice. And if the defendants did not want to take the plea, they could have gone to trial, because Court and counsel, I am assuming, were well aware of the provocative act doctrine cases that preceded their plea." The court continued: "That being said, referring to Defendant Ramos, his actions clearly demonstrated reckless indifference to human life, conscious disregard to human life, as well as I do find that he has had the express malice intent, specific intent to kill [M.R.], based on his actions in the car. [M.R.] testified that he saw two different guns shooting at him. Based on the fact that Mr. Ramos went into the bank intending to kidnap, take hostages, carjack, and armed with his fellow accomplices, all of them armed, one of them armed with a rifle. [¶] So even assuming that he was qualified to be resentenced, which I'm finding he's not, this Court would find that he is guilty beyond a reasonable doubt of harboring implied malice for the provocative act murder and express malice for the killings."

Ramos filed a timely notice of appeal.

### DISCUSSION

### I.

Effective January 1, 2019, Senate Bill No. 1437 narrowed the scope of the felony-murder rule and eliminated the natural and probable consequences doctrine as a basis for murder liability. (*People v. Curiel* (2023) 15 Cal.5th 433, 448-450.) Among other things, the enactment amended section 188 to require that a principal convicted of murder "act with malice aforethought." (Stats. 2018, ch. 1015, § 2, subd. (a)(3).) It further provided that malice "shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*) It also added a procedure to permit individuals convicted of murder under prior law to seek vacatur of their convictions and resentencing. (Stats. 2018, ch. 1015, § 4; *Curiel*, at pp. 449-450.)

5

In 2021, the Legislature adopted Senate Bill No. 775 (2021-2022 Reg. Sess.) to expressly allow those convicted of attempted murder under the natural and probable consequences doctrine or manslaughter to seek resentencing. (Stats. 2021, ch. 551, § 2, subd. (a); *People v. Coley* (2022) 77 Cal.App.5th 539, 544, 548.) The Legislature enacted the provision to "clarif[y] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) The law took effect on January 1, 2022. (*Coley*, at p. 544.)

If a resentencing petition sets forth a prima facie case for relief, the trial court must hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d); *People v. Strong* (2022) 13 Cal.5th 698, 708-709.) As originally enacted, the statute provided: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3), added by Stats. 2018, ch. 1015, § 4.)

The Legislature amended the statute in 2021 and renumbered it as section 1172.6 in 2022, and it now reads in relevant part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any

6

prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3); see Stats. 2021, ch. 551, § 2; Stats. 2022, ch. 58, § 10.)

A trial court's denial of a section 1172.6 petition following an evidentiary hearing is ordinarily reviewed for substantial evidence.  (*People v. Reyes* (2023) 14 Cal.5th 981, 988; *People v. Emanuel* (2025) 17 Cal.5th 867, 885.)  Under this standard, an appellate court reviews the record " ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Reyes*, at p. 988.)  The meaning of a statute is a question of law that we review de novo.  (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.)

II.

Ramos argues that the trial court erred in relying on the testimony presented to the grand jury.  The Attorney General concedes the error.  We granted the San Joaquin District Attorney's application to file an amicus curiae brief, in which the district attorney argues that grand jury testimony is admissible at an evidentiary hearing under section 1172.6, subdivision (d)(3).

In *People v. Robinson* (2024) 106 Cal.App.5th 854, 872, review granted February 26, 2025, S288606, a panel of this court concluded that testimony from a grand jury proceeding is admissible in an evidentiary hearing under section 1172.6, subdivision (d)(3) as "evidence previously admitted at any prior hearing or trial."  Our

Supreme Court has granted review in that case. (*People v. Robinson*, review granted Feb. 26, 2025, S288606.) Pending our state high court's decision, we conclude that testimony adduced at a grand jury proceeding is not admissible in a section 1172.6 evidentiary hearing.

" ' " ' " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' " [Citation.] " '[W]e look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" ' " [Citation.]' ' " ' " 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " ' " ' [Citation.] ' "Generally, we consult extrinsic sources, like a statute's history, to interpret a statute only when its language is ambiguous." ' " (*Walker*, *supra*, 16 Cal.5th at p. 1032.)

Applying these tools of construction, we conclude that the phrase "evidence previously admitted at any prior hearing or trial" in section 1172.6, subdivision (d)(3) does not encompass evidence that the prosecution presented to a grand jury. Beginning with the language "any prior hearing" (§ 1172.6, subd. (d)(3)), one definition of the word "hearing" found in the case law includes "a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence." (*People v. Pennington* (1967) 66 Cal.2d 508, 521; see also *In re Cook* (2019) 7 Cal.5th 439, 449, fn. 3; *The Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 272, fn. 12.) Under that definition, a grand jury proceeding could qualify as a "hearing," as the district attorney argues, in that it involves the presentation of evidence to the end of determining whether probable cause supports the return of an

8

indictment.  (§§ 889, 917, 939.8; *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1027.)

The context in which section 1172.6 uses the word "hearing," however, precludes such a broad reading of the term.  (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1249 [looking to context to construe term "hearing"].)  With limited exception (§§ 923, subd. (c)(1), 939.7), the Legislature's statutory scheme for grand jury proceedings does not label a grand jury proceeding a "hearing."  (See § 888 et seq.)  Instead, the Legislature provided that grand juries convene in "sessions" (§§ 934, 935, 938, 939, 939.1) or "proceedings" (§§ 891, 939.21; see Pen. Code, pt. 2, tit. 4, chs. 1-3, § 888 et seq. [entitled "Grand Jury Proceedings"]).

At the same time, grand jury proceedings are different in kind from the hearings and trials that are undisputedly covered by section 1172.6, subdivision (d)(3), such as preliminary hearings or criminal trials.  (See *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158 [preliminary hearing testimony]; *People v. Cody* (2023) 92 Cal.App.5th 87, 101-104 [testimony at jury trial].)  A grand jury proceeding "serves as part of the charging process of criminal procedure, not the adjudicative process that is the province of the courts or trial jury."  (*Cummiskey v. Superior Court*, *supra*, 3 Cal.4th at p. 1026, italics omitted; see also *People v. Ocobachi* (2024) 105 Cal.App.5th 1174, 1182.)  The grand jury's charge is to "investigate" and "inquire."  (§§ 888, 917, 918, 939.6.)  The proceeding is "investigatory, not adversarial."  (*People v. Petrilli* (2014) 226 Cal.App.4th 814, 825.)  Unlike a preliminary hearing or trial, a grand jury session "is not the same proceeding as a subsequent criminal prosecution."  (*Ibid.*, italics omitted.)  Unlike a preliminary hearing or trial, the defendant is not a party to a grand jury proceeding, receives no notice of it, and is not entitled to appear.  (*Ibid.*; *People v. Superior Court* (*Mouchaourab*) (2000) 78 Cal.App.4th 403, 415; *Ocobachi*, at p. 1182.)  And unlike a preliminary hearing or trial, a judge is generally not present during a grand jury session after initially instructing the grand jury as to its duties.  (§ 934, subd. (a); *People v.*

9

*Superior Court* (*Mouchaourab*), at p. 415.)  Given these distinct features, we think it unlikely the Legislature grouped grand jury sessions in with preliminary hearings and trials when it used the word "hearing" in the statute.  (§ 1172.6, subd. (d)(3).)

Turning to the statute's phrase "previously admitted," that language also does not apply to testimony or evidence adduced in a grand jury proceeding.  (§ 1172.6, subd. (d)(3).)  A grand jury does not "admit" evidence.  Rather, it "receive[s]" evidence relevant to its investigation.  (§ 939.6, subds. (a) & (b).)  It is required to "weigh all the evidence submitted to it" (§ 939.7), and no judicial officer makes evidentiary rulings admitting evidence for the grand jury's consideration (§ 934, subd. (a)).

The statute's express reference to preliminary hearings also bolsters the conclusion that transcripts from grand jury proceedings are not admissible in evidentiary hearings under section 1172.6.  As noted above, section 1172.6 generally allows trial courts to consider evidence admitted at prior hearings—but subject to an exception for hearsay evidence that was admitted in a preliminary hearing under section 872, subdivision (b).  (§ 1172.6, subd. (d)(3).)  Such evidence "shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (*Ibid.*)  The statute, however, contains no similar carveout for similar hearsay testimony that is permitted in grand jury proceedings.  (*Ibid.*; § 939.6, subd. (c) [allowing qualified law enforcement officers testifying in grand jury proceedings to relate out-of-court statements for their truth to lay a foundation for the admission of documents and other evidence].)  This omission suggests that the Legislature did not contemplate that grand jury transcripts would be admissible in a section 1172.6 evidentiary hearing in the first place.  (See *People v. Davenport*, *supra*, 95 Cal.App.5th at p. 1158 [statute's exclusion of evidence admitted at a preliminary hearing under § 872, subd. (b) shows the Legislature "expressly contemplate[d] that preliminary hearing testimony in particular will be considered" at a § 1172.6 evidentiary hearing].)

Reading the statute to allow law enforcement officer hearsay testimony from grand jury proceedings, but not such testimony from preliminary hearings, would lead to anomalous results. As noted above, an earlier version of the statute allowed the prosecution to "rely on the record of conviction" in a section 1172.6 evidentiary hearing. (Former § 1170.95, subd. (d)(3).) Effective January 1, 2022, the Legislature narrowed that provision to restrict the sources of admissible evidence, including by limiting hearsay testimony introduced through law enforcement officers that may have been allowed in a preliminary hearing. (Stats. 2021, ch. 551, § 2; see *People v. Davenport*, *supra*, 95 Cal.App.5th at p. 1159.) Given this focus and the legislative goal of tightening the evidentiary rules, it is unlikely the Legislature intended to make a more generous allowance for hearsay testimony presented at a grand jury proceeding, where witnesses are not subject to cross-examination, than for hearsay testimony adduced at a preliminary hearing, where witnesses are subject to cross-examination.

The district attorney contends that precluding grand jury testimony would transform section 1172.6 evidentiary hearings into full-scale retrials, contrary to the Legislature's intent. It is true that the Legislature declined to give all eligible defendants "a new trial by a new jury on the critical factual questions" at issue in a section 1172.6 petition. (*People v. Clements* (2022) 75 Cal.App.5th 276, 297.) But that does not mean that the Legislature intended for the record of any prior proceedings to be admissible or sufficient in every case. To the contrary, in enacting section 1172.6, the Legislature charted a "middle course," where, "at least in some cases," trial judges "decide the critical factual questions based . . . on a cold record"—while at the same time allowing both the defendant and the prosecution to introduce live testimony and new evidence when needed or desirable. (*Ibid.*; see § 1172.6, subd. (d)(3) ["[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens"].)

Allowing grand jury testimony would also fall short of the standards of fairness and reliability that the Legislature intended when it broadly required section 1172.6

11

evidentiary hearings to comply with the Evidence Code, subject to a carefully constructed exception for evidence that a judicial officer admitted at a prior hearing or trial. While grand jury proceedings contain important procedural safeguards—including, for example, the prosecutor's ethical obligations when presenting evidence to a grand jury and the defendant's ability to challenge an indictment after the fact (§§ 939.6, subd. (b), 939.71, 995; *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 255)—these limited protections do not compare with those accompanying ordinary hearings and trials that are part of a criminal proceeding. The prosecution's evidence in a grand jury session is entirely free from adversarial testing. Witnesses are not subject to cross-examination. The defendant is not entitled to be present. Generally, no judicial officer presides over the session. Allowing the prosecution to rely on evidence adduced under these conditions in a section 1172.6 hearing would elevate efficiency at the expense of fairness and reliability, contrary to the Legislature's intent.

Because witness testimony presented to a grand jury does not qualify as "evidence previously admitted at any prior hearing or trial" (§ 1172.6, subd. (d)(3)) and because no party contends that another exception to the hearsay rule applies to the grand jury testimony considered in this case, the trial court was not permitted to rely on the transcripts from the grand jury proceeding in the section 1172.6 evidentiary hearing.[2]

## II.

The Attorney General concedes that the trial court's reliance on grand jury testimony was prejudicial. The district attorney, however, maintains that any error in admitting that evidence was harmless because Ramos was ineligible for relief because he

---

[2]  In light of our conclusion that grand jury testimony is not admissible by statute, we need not address Ramos's additional contention that admission of the grand jury transcripts violated his constitutional rights.

12

was prosecuted under a valid provocative act theory. We cannot agree that the trial court's error was harmless.

First, with respect to his conviction for murder, Ramos did not plead to provocative act murder. Rather, at the change of plea hearing, he expressly pleaded to murder "under the felony murder rule." The district attorney acknowledges that "the plea transcript could be understood to reflect an agreement that [Ramos's] conviction was based on a felony murder theory," but nevertheless maintains that "[a]ll parties at the time of the plea[] understood that [Ramos] was not being prosecuted under the felony-murder rule but rather [under] the provocative act doctrine." In support, the district attorney invites us to look at the briefs and proceedings concerning Ramos's motion to dismiss in which the prosecution argued that Ramos could not be guilty of felony murder because the bullets that killed the victim were fired by police, not the perpetrators who committed the felony. (See *People v. Washington* (1965) 62 Cal.2d 777, 781-783; accord, *People v. Lee* (2020) 49 Cal.App.5th 254, 263-264.) We decline the invitation because the trial court expressly refused to consider the briefing filed in connection with Ramos's motion to dismiss. Further, the only facts that could establish that Ramos committed provocative act murder were contained in the grand jury testimony—which, as we have explained, was not admissible at the section 1172.6 evidentiary hearing.

With respect to Ramos's conviction for attempted murder, the district attorney offers no argument that the error in considering grand jury testimony was harmless as to that count. And because there is no admissible evidence in the record, it is not possible for us to conclude that the People carried their burden to show that Ramos was guilty, beyond a reasonable doubt, of the attempted murder of M.R. on a still-valid theory.

The trial court's error in considering the inadmissible grand jury testimony was not harmless. We therefore reverse the trial court's order and remand the matter for a new evidentiary hearing under section 1172.6, subdivision (d)(3).

13

## DISPOSITION

The order denying the section 1172.6 petition is reversed, and the matter is remanded for a new evidentiary hearing.

                                            /s/
                                     FEINBERG, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
BOULWARE EURIE, J.